Dorothy M. RIGBY, Individually, et al.,
Appellees,

v.

Norma EASTMAN a/k/a Norma Sheker,
d/b/a R & N Tavern and
Cafe, Appellant.

No. 55919.

Supreme Court of Iowa.

April 24, 1974.

Vern A. Kramer and Ulstad & Guinan, Fort Dodge, for appellant.

J. Desmond Crotty, Pocahontas, and Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellees.

Heard before MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and REYNOLDSON, JJ.

MOORE, Chief Justice.

Defendant appeals from dramshop damage action judgment for loss of support by widow and children of decedent to whom defendant tavern operator sold intoxicating liquor. We affirm.

About 4:00 p. m. September 13, 1969 John Michael Rigby (Rigby), and his fellow employee, Danny Smith, left the job of their employer Glynn Construction Company and went to the R & N Tavern and

Cafe in Otho. Defendant Norma Eastman was its liquor licensee. There Rigby had several drinks of whiskey and ate a meal. Rigby and Smith left the tavern about 6:15 p. m. to go to Fort Dodge in the company truck driven by Rigby.

Approximately five miles from the tavern, while driving about 60 miles per hour on dry pavement during daylight, Rigby, as he approached a curve, lost control of the truck. It skidded left, then right and turned over in the north ditch. Rigby was thrown out and received fatal injuries. He was dead on arrival at Bethesda General Hospital at Fort Dodge at about 6:50 p. m. Shortly thereafter Dr. James Reed, deputy medical examiner viewed the body and noticed an odor of alcoholic beverage. He then drew a blood specimen. Additional evidence will be set out infra as it relates to defendant-appellant's assignments of error.

Rigby's widow, Dorothy M. Rigby, filed a claim for Workmen's Compensation. The employer and its carrier denied liability principally on the ground Rigby was intoxicated at the time of his death. The claim was compromised and settled for $7500. Later the widow and the three named minor Rigby children brought this action against defendant under dramshop law. Following trial to the court and filing of detailed findings of fact and conclusions of law, judgment for $10,000 for Mrs. Rigby and $8000 for the minor children was entered. Defendant has assigned seven errors on her appeal.

■ In this law action we are a court of correction of errors of law. The findings of fact in this case tried to the court have the effect of a special verdict. Rule 334, Rules of Civil Procedure.

I. Defendant first contends the workmen's compensation claim settlement bars recovery in this dramshop action. The employer had interposed the defense of Rigby's intoxication. (No employee may obtain workmen's compensation when his in-

toxication was the proximate cause of the injury. Code section 85.16). For undisclosed reasons the parties agreed to settle. They entered into a special case settlement which was approved by the industrial commissioner.

We recently discussed this type of settlement in Rich v. Dyna Technology, Inc., Iowa, 204 N.W.2d 867. At page 871, we say:

"Even assuming the settlement was filed with and approved by the commissioner, this would be at most a final adjudication that a bona fide dispute existed as to liability, and without resolving the issue, the parties agreed to settle the case. Mere approval by the commissioner of a settlement, under a denial of liability, could not impart to it the status of a memorandum of agreement. In thus construing the instrument before us, we do not decide the question of the legal efficacy of such settlements in the workmen's compensation arena. * * *."

■ One of the three prerequisites before collateral estoppel is applicable is a "determination of these issues by a valid final judgment to which such determination is necessary." Mizer v. State Automobile & Casualty Underwriters, Iowa, 195 N.W.2d 367, 371; Goolsby v. Derby, Iowa, 189 N.W.2d 909, 913.

■ No issue other than a disputed claim was decided by the special case settlement. No judgment was entered. Therefore we do not have the question of res judicata and issue preclusion as argued by defendant. Defendant's first assigned error is untenable.

II. Defendant's second and third assigned errors relate to claimed improper admission of exhibit 1, Rigby's death certificate and exhibit 2, a laboratory contingency form on blood specimen taken from Rigby. On the death certificate was written "Blood Alcohol Content 258 mgm." Exhibit 2 included on entry: "Alcohol

Level—258 mg/100 ml plasma 4:00 p. m. 9/15/69.

The trial court, over defendant's hearsay objection, admitted the two exhibits on the condition the entries be properly connected and established by other evidence. Defendant argues vigorously the complete chain of custody of the blood specimen from Dr. Reed to the testing and result thereof was not established by the evidence.

Dr. James E. Reed, Fort Dodge obstetrician, in his capacity as deputy county medical examiner, obtained from the hospital laboratory a small vacuum tube especially manufactured for preserving blood specimens. He inserted a needle through the stopper and filled the tube from a syringe. He testified he believed he labeled it. Dr. Reed in accordance with established hospital practice then delivered the tube to Mrs. Marian Milberger, lab technician, whose job it was to collect blood samples and prepare a contingent sheet. She put Rigby's blood specimen in a locked box which was left in the pathologist's office. The key to the locked box was kept by three switchboard operators during their respective hours of duty. On September 15, 1969 Jerome Burmeister, medical technologist, whose qualifications we will discuss infra, obtained the key to the locked box from the switchboard operator then on duty. He removed the tube labeled John Michael Rigby. The stopper was in place. Burmeister's analysis of the blood resulted in a finding of an alcohol content of 258 milligrams per 100 milliliters.

Dr. Reed, Mrs. Milberger and Burmeister related their custody of the blood specimen tube or vial. The switchboard operators were not called as witnesses. Defendant argues this resulted in a gap in the chain of custody evidence barring admissibility of the blood test result. Like the trial court, we do not agree. The switchboard operators did not at any time have custody of the blood specimen. At most they could have gone into the pathologist's office, unlocked the box and tampered with the vial and its contents. The record discloses no evidence of any such activity.

■■ It is not essential for admissibility involving blood specimens that a party negative the possibility of tampering or substitution absolutely. It is sufficient to establish that it is reasonably probable tampering or substitution did not occur. Contrary speculation affects the weight of the evidence but not its admissibility. State v. Lunsford, Iowa, 1973, 204 N.W.2d 613, 617 and citations.

The trial court's findings include: "It is more reasonable on the record made to say there was no reasonable possibility of tampering."

Defendant's second and third assigned errors are without merit.

III. Defendant next contends the trial court erred in finding Rigby was intoxicated. Defendant argues because the witnesses who observed Rigby at the tavern and Smith who rode with him testified they saw no outward conduct or appearance of intoxication, the trial judge should have found as a matter of law insufficient evidence of intoxication. In other words as we understand defendant's position, the blood test evidence standing alone would not support the finding Rigby was intoxicated.

The medical technologist, Burmeister, after relating his education and practice training, testified the Rigby blood specimen had an alcohol level of 258 milligrams per 100 milliliter plasma. His testimony includes:

" * * *. From 100 to 150 milligrams most people will exhibit typical characteristics; staggered gait, slurred speech and bloodshot eyes. The 150 to 300 milligrams range is the range that most individuals fall into that are picked up by law enforcement agencies. There are, however, individuals that can walk a straight line and give no real outward

appearance of being under the influence of alcohol. They have become accustomed to the effects of alcohol. They appear to be normal. A person with a 250 level would be obviously under the influence, not necessarily by outward appearances, but certainly in the realm of loss of judgment, inability to understand things, things like that."

Chemical tests for intoxication are now widely used. The results of such tests, like other scientific tests, are universally held competent evidence and cogent proof when a proper foundation as to accuracy is established. 29 Am.Jur.2d, Evidence, § 830; 31 Am.Jur.2d, Expert and Opinion Evidence, § 116; 22A C.J.S. Criminal Law § 645(3).

This court has approved chemical tests for intoxication on numerous occasions. They have been an important tool in law enforcement. State v. Klinger, Iowa, 185 N.W.2d 759; State v. Kindschuh, 248 Iowa 440, 80 N.W.2d 750; State v. Slater, 242 Iowa 958, 48 N.W.2d 877; State v. Koenig, 240 Iowa 592, 36 N.W.2d 765; State v. Werling, 234 Iowa 1109, 13 N.W.2d 318; State v. Haner, 231 Iowa 348, 1 N.W.2d 91.

The weight and credit to be given such evidence is for the trier of fact. There was substantial evidence supporting the finding of intoxication notwithstanding lack of visible indications thereof.

IV. Defendant also contends knowledge of the patron's intoxication is an essential element in a dramshop action. The trial court held plaintiffs could recover under either Code sections 129.2 or 123.95. Each gives to widows, children and other named persons a right of action for loss resulting from a licensee serving a person liquor causing intoxication.

These statutes should be liberally construed to aid in suppressing the mischief of serving an excessive amount of liquor to a patron. Wendelin v. Russell, 259 Iowa 1152, 147 N.W.2d 188. We find nothing to suggest that knowledge of intoxication is required under either statute. Defendant's argument she could not be liable in the absence of "visible intoxication" is entirely without merit.

V. Defendant's fifth assignment of error is the trial court erred in allowing Baughman to testify, over objection, as to the effect of alcohol on Rigby.

The record discloses the medical technologist, Robert W. Baughman, has four degrees from Iowa State University, a Doctorate in Bacteriology with a minor in Bio-chemistry, a Master's Degree in Dairy Bacteriology, a Master's Degree in Botany, and a B.S. Degree in Agriculture. He owns and operates the Bio Assay Laboratory in Ames. His laboratory runs blood and urine alcohol tests, drug identification and drug recovery from body fluid tests. He worked with Dr. Joseph Graca, a pharmacologist, for five years. They tested the physiological responses of the body to alcohol. He has made a study of various tests to determine the alcoholic content of body fluids. He has testified as an expert in these areas in many cases, both civil and criminal.

In Ganrud v. Smith, Iowa, 1973, 206 N.W.2d 311, we exhaustively cite authorities and discuss the subject of admissibility of expert testimony. Repetition here is unnecessary. Stated briefly the receipt of opinion evidence, lay or expert, rests largely in the sound discretion of the trial courts where the record shows the witness is qualified adequately to express an opinion on facts sufficiently stated by the witness.

The trial court determined Baughman did possess the necessary qualifications. We find no abuse of discretion.

VI. Defendant maintains the evidence was insufficient to support the $10,000 recovery of Mrs. Rigby. She had been separated from her husband since

1968. She maintained the family home and three minor children. Rigby contributed support of about $3000 in 1968 and $2000 in 1969. The trial court found plaintiff had proven damages to her means of support having a present value of $10,000. That finding is supported by substantial evidence and is binding on this court. Rule 344(f)(1), Rules of Civil Procedure.

VII. Lastly defendant argues Mrs. Rigby's $10,000 recovery should be reduced by the $7500 workmen's compensation claim settlement. The applicable general well-established legal principles are contrary to defendant's contention.

The rule is thus stated in bold type in 25 ·C.J.S. Damages § 99(3), page 1017:

"In the application of the collateral source rule, it is generally recognized that a wrongdoer may not set up in mitigation of damages that the injured person has received payments made under Workmen's Compensation Act or under the Social Security Act, or that his salary or wages have been paid as before." See also 22 Am.Jur.2d, Damages, § 209.

In Clark v. Berry Seed Co., 225 Iowa 262, 280 N.W. 505, we considered a problem similar to the one at hand. There Clark was driving his employer's truck when it was struck by a vehicle driven by a Berry Seed Company employee. Clark was injured and sued Berry Seed Company, His employer paid his medical expense. Berry sought to have Clark's recovery reduced by the value of medical attention furnished by his employer. At page 271 of 225 Iowa, page 510 of 280 N.W., we said:

" * * *. The weight of authority is conclusive to the effect that a defendant owes to the injured compensation for injuries, the proximate cause of which was his own negligence, and that the payment by a third party cannot relieve him of this obligation; that regardless of the motive impelling their payment, whether from affection, philanthropy or contract,

that the injured is the beneficiary of the bounty, and not the defendant who caused the injury. * * *."

We have considered defendant's many contentions and find no reversible error. The judgment of the trial court must be and the same is hereby affirmed.

Affirmed.