Thomas E. CARTER and Gloria Carter,
Plaintiffs/Cross-Appellants,

v.

WIESE CORPORATION,
Defendant-Appellant.

No. 83–1624.

Court of Appeals of Iowa.

Oct. 23, 1984.

Mark J. Wiedenfeld of Grefe & Sidney, Des Moines, for defendant-appellant.

Terrence A. Hopkins of Hopkins & Huebner, P.C., Des Moines, for plaintiffs/cross-appellants.

Heard by OXBERGER, C.J., and SNELL and SACKETT, JJ.

SACKETT, Judge.

### Statement Of The Case

Defendant, Wiese Corporation, appeals from an adverse jury verdict entered in a case involving the plaintiff, Thomas E. Carter. Plaintiffs have cross-appealed from portions of the same verdict. Plaintiffs, Thomas E. and Gloria Carter, brought this action seeking damages for personal injury and loss of consortium as a result of an incident which occurred at defendant Wiese Corporation's place of business. On September 12, 1983, pursuant to a jury trial, a verdict was returned in favor of the plaintiff, Thomas E. Carter, setting his total damages at $117,500.00 and finding him to be ten percent negligent in causing his own injuries. A verdict was returned in favor of the defendant on plaintiff-Gloria Carter's claim for loss of consortium. After the entry of judgment, Tom Carter moved to have the court set aside the portion of the judgment finding him guilty of ten percent comparative negligence and Gloria Carter moved for a new trial.

Defendant moved for a remittitur and for a new trial. All posttrial motions were denied by the trial court.

### Statement Of The Facts

Plaintiff, Thomas E. Carter, is forty-five (45) years old. He is married, and his wife of thirty (30) years is the plaintiff, Gloria Carter. Mr. Carter held his first truck driving job at age eighteen and, although he has held various jobs since then, he has worked off and on as a truck driver for approximately a total of six (6) years. At the time of the accident in question, which occurred on or about May 25, 1979, Mr. Carter was working for Kinney Truck Lines. The plaintiff began working for Kinney Truck Lines in January of 1979, hauling grain and steel, as well as steel and manufactured parts to and from the defendant Wiese Corporation.

On the day the accident occurred, plaintiff drove his 42-foot flatbed truck into the Wiese Corporation plant to deliver a load of steel bars. These bars were of various lengths and diameters and came wrapped in bundles. Roger Neuhalfen, a Wiese employee, began to unload the bundles with a moveable overhead electric crane. As one bundle was being lifted off the trailer the steel bars shifted resulting in a sudden jar which activated a circuit breaker located on the crane. This safety feature results in a power cut-off to the crane when a load shift occurs. Wiese Corporation's maintenance foreman, Mike Flynn, was called to activate the reset button for the crane. In this regard, Flynn brought a ladder, placed it in the bed of the trailer leaned it against the crane, climbed up the ladder, pushed the reset button, and climbed back down the ladder. Plaintiff testified that he thought the crane was twelve (12) to fourteen (14) feet above the bed of the truck. He estimated that he was standing approximately fifteen (15) feet from the base of the ladder. He further testified that while Mike Flynn was resetting the circuit breaker, plaintiff was arranging some chains and binders from the trailer bed so he would be ready to leave as soon as the last bundles of steel were unloaded from the truck. Roger Neuhalfen tried the control button to make sure power had been restored to the crane. When this occurred the crane moved slightly, allowing the ladder to slide free and start to fall. Mike Flynn stated that he saw the ladder begin to fall, grabbed hold of it as it fell away from him, and yelled more than one warning to Tom Carter to get out of the way. The end of the ladder struck the plaintiff around the head, neck and shoulders. Both Flynn and the plaintiff testified that if the plaintiff had been watching when the hoist moved and the ladder began to fall the plaintiff would have had time and the available space to avoid the falling ladder.

At the time of his injury, the plaintiff owned a hard hat but was not wearing it. Plaintiff was aware that hard hats were

required in plants such as this where overhead cranes were in use, and plaintiff began to wear his hard hat after this incident. Signs were posted on the doors of the Wiese plant indicating that use of hard hats was required, and the company had extra hard hats available for drivers coming to the plant. All of the Wiese employees at the site were wearing hard hats at the time of the accident.

After his injury, plaintiff went to his family physician, Dr. Clifford Clay, who released him to work on June 30, 1979. Plaintiff was off work for approximately five weeks with pain in the regions of the neck, shoulder and arm. Plaintiff returned to work at Kinney Truck Lines and drove continuously for about 18 months until he quit his job in mid-January of 1981. Plaintiff claimed he quit his job because of health problems, and his employer testified that he quit his job with Kinney because he was not happy with the work assignment given to him.

After quitting his job, plaintiff went to Dr. Robert Hayne, a Des Moines neurologist, for evaluation and testing. Dr. Hayne did a complete neurological examination which results he found to be normal. The doctor also performed a normal cervical myelogram. Plaintiff was told to attempt to return to work. On referral by Dr. Hayne, the plaintiff went to see Dr. John Kelley, a Des Moines orthopedic surgeon, in order to have an examination performed pursuant to complaints about pain in the plaintiff's shoulder. After some exploratory surgery on the shoulder, Dr. Kelley found the plaintiff to have five (5) percent permanent disability in his shoulder, but urged him to return to work.

In August of 1982, plaintiff visited with another doctor who consulted with Dr. Hayne. Dr. Hayne performed surgery to remove portions of a protruded intervertebral disc and fused the adjacent cervical vertebrae. According to Dr. Hayne, plaintiff has a ten (10) percent permanent impairment as a result of his cervical condition. Plaintiff was advised on February 1, 1983 that he could return to work, but that he was not to lift over 40 pounds.

At the time of trial, plaintiff was still suffering from pain in the neck and movement of the head caused headaches. Plaintiff testified that Dr. Hayne advised him that his headaches and neckaches would improve over time and would eventually go away. Plaintiff received a D.O.T. physical certification in the summer of 1983 from Dr. Clay. At the time of trial, defendant was working as a mechanic for truck refrigeration units and expected to continue in that field. He doesn't feel he will be able to return to work as an over-the-road truck driver.

### Law And Application

**I. The issue of worker's compensation as it relates to the fairness and reasonableness of the plaintiff's medical charges from Dr. Clay.**

Plaintiff, Thomas E. Carter, at the time of trial had received worker's compensation benefits. These benefits included weekly payments for disability pursuant to injuries he sustained as a result of the May 25, 1979 accident. Defendant's attorney sought to introduce evidence that the plaintiff was eligible for and in fact received worker's compensation medical benefits. In plaintiff's suit against the defendant, he has made claim of various medical expenses, including $2,323.00 charges from Dr. Clifford Clay. While taking Dr. Clay's deposition, the defendant was able to determine that Dr. Clay indicated that he made charges for treatments to Mr. Carter's neck and back, while rendering some gratuitous services to the plaintiff's children.

Q. Could you explain why you did not charge for treating Mr. Carter's children and you only charge him $10 for 30 to 45 minute thorough physical and you only charge him $10 for flu, but you charge him considerably more than that for each visit relating to his treatment for his neck and back? A. I suppose because I lead with my heart instead of my better judgment.

Q. And could it be because you knew that Mr. Carter had been injured on the job and you knew that his worker's compensation would be paying those bills but they would not be paying the bills for his children's ailments? A. That's right.

As the plaintiff has the burden to prove the amount of damages he sustained as a result of the crane accident, necessarily, the fairness and reasonableness of the amount of Dr. Clay's charges for medical treatment is an issue in this case. The defendant claims the fact that plaintiff was eligible for and received worker's compensation benefits is relevant to this case because, as he views it, the receipt of benefits was the determining factor when Dr. Clay set the amount of his charges. Relevant to defendant's claim is a statement by the Iowa Supreme Court:

> The weight of authority is conclusive to the effect that a defendant owes to the injured compensation for injuries, the proximate cause of which was his own negligence, and that the payment by a third party cannot relieve him of this obligation; that regardless of the motive impelling their payment, whether from affection, philanthropy, or contract, that the injured is the beneficiary of the bounty, and not the defendant who caused the injury.

*Rigby v. Eastman,* 217 N.W.2d 604, 609 (Iowa 1974) (quoting from the case of *Clark v. Berry Seed Co.,* 225 Iowa 262, 271, 280 N.W. 505, 510 (1938)). Iowa has adopted the "collateral source rule" so that a tortfeasor's obligation to make restitution for the injury it caused is undiminished by any compensation received by the injured party from a collateral source. *See Groesbeck v. Napier,* 275 N.W.2d 388, 392 (Iowa 1979). In *Rigby, supra,* the supreme court stated the rule as it is found in 25 C.J.S. *Damages* § 99(3) (1966).

> In the application of the collateral source rule, it is generally recognized that a wrongdoer may not set up in mitigation of damages that the injured person has received payments made under

Workmen's Compensation Act or under the Social Security Act, or that his salary or wages have been paid as before. *Id.*

Liberty Mutual Insurance Co., is the worker's compensation carrier for Kinney Truck Lines. The insurance carrier has, however, not chosen to intervene in this lawsuit as is their right. Iowa R. of Civ.P. 75 (1983). We find no rule, nor have the parties cited any rule, which makes it mandatory for a worker's compensation carrier's identity to be revealed to the jury. The plaintiff desired to stipulate that no mention be made that worker's compensation benefits had been applied for, nor that any such benefits had been paid. Defendant objected to this, and the trial court ruled that no evidence of worker's compensation would be allowed into evidence other than what plaintiff's counsel had revealed in opening statement. Plaintiff's counsel stated that the worker's compensation carrier was subrogated and that all of the compensation benefits would have to be paid back out of any recovery.

The Iowa Supreme Court has stated the guidelines for dealing with compensation carriers during jury trials in the case of *Price v. King,* 122 N.W.2d 318 (Iowa 1963). The amount of the compensation benefits awarded or claimed should not be disclosed. *Id.* at 322. Evidence relative to this issue should not be admitted. *Id.* The jury should be instructed that such matters have nothing whatever to do with the issue of defendant's liability to the plaintiff, or to the extent or amount of that liability. *Id.*

In light of such strong language from the supreme court, regarding evidence as to amount of benefits claimed or paid, we hold that this evidence should not come before the jury in this instance. Dr. Clay testified to the effect that he treated plaintiff's children, at times, for little or no charge. The doctor stated that he did this because he sometimes led "with [his] heart, instead of [his] better judgment." There was no evidence introduced to suggest that he charged the plaintiff anything other than his standard fee for treatments to the

plaintiff's neck and back. Pursuant to the authority outlined earlier from the *Rigby, supra,* case, we find that Dr. Clay's omission to charge the plaintiff for some medical treatment to plaintiff's children was motivated by affection or philanthropy. 217 N.W.2d at 609. This does not have an adverse bearing on the issue of whether Dr. Clay's charges for defendant's back and neck treatments were "fair and reasonable." Likewise, the fact that the doctor was aware that benefit payments from worker's compensation coverage would cover the medical bills does not in and of itself prove that the sums charged by Dr. Clay were not "fair and reasonable." There are other methods that the defendant could have used to prove his claim on this issue. He could have inquired as to what the doctor charged other patients for similar treatment. He could have gathered evidence as to the normal fee charged in the community for this type of treatment. When faced with equally or more effective alternative methods of proving his contention, the defendant is not entitled to present evidence of the amount of worker's compensation benefits claimed to do so.

## II. The claim and receipt of worker's compensation as it relates to the issue of malingering, or as a tool for impeachment.

Defendant claims the trial court erred in not allowing into evidence the fact that plaintiff applied for and received worker's compensation benefits. Defendant asserts that the collateral source rule does not apply where there is alleged malingering being practiced by the plaintiff. Defendant also claims that evidence of this nature is admissible for impeachment purposes where Mr. Carter claims that his inactivity after the accident was due to injuries he suffered when hit by the falling ladder.

The possible prejudice to the plaintiff which attends informing the jury that he has already received worker's compensation benefits for the injuries complained of in a subsequent negligence action against the defendant-tort-feasor is reason

that the trial court should be wary to admit this evidence. As the discussion on the "fairness and reasonableness" of Dr. Clay's medical charges revealed, evidence of request for and receipt of benefits is admissible only in limited circumstances. This evidence is incompetent for the purpose of directly reducing properly recoverable damages. 25 C.J.S. *Damages* § 99(3) (1966). On the other hand, it is competent evidence as to the issue of possible malingering by the plaintiff, Tom Carter. Where the danger of the jury's misuse of the evidence for the incompetent purpose is great, and its value for proving malingering is slight or if malingering can be proved by other evidence or means, we will recognize the trial judge's power to exclude it altogether. *See* McCormick, *Law of Evidence* § 59 (1972).

"Malingering" has been defined as the act of pretending to be ill or injured in order to avoid work. *Board of Trustees of Fire and Police Employees Retirement System of City of Baltimore v. Ches,* 294 Md. 668, —, 452 A.2d 422, 427 (1982). There are other ways with which the defendant could have attempted to prove up his claim of malingering. Expert or nonexpert opinion testimony could have been offered as to the behavior and activity of the plaintiff. Defendant could have gotten expert medical testimony to effect the conclusion that plaintiff was malingering, given the extent of his injuries. As it was, the trial judge himself felt that evidence of worker's compensation benefits had very little probative value as to the issue of malingering. The judge stated, "... I don't think [receipt of benefits] is any evidence of malingering at all because you have got the cart before the horse. [Plaintiff] doesn't get [benefits] until he is disabled." We do not believe the insurance carrier would have paid out benefits without some evidence of a compensable injury.

We are appreciative of the proposition that evidence may be clearly inadmissible for one purpose, and yet the same evidence may be proper and admissible for some other legitimate purpose. *See Lemke*

*v. Mueller,* 166 N.W.2d 860 (Iowa 1969). There is a great interest in keeping the amount of benefits received by the plaintiff from being revealed to the jury. This is so the collateral source rule will not be circumvented by improper means. *See* C.J.S. *Damages* § 99(3) (1966). The fact that plaintiff had applied for and received some unspecified amount of benefits had already been established earlier in the trial. Defendant has offered a tenuous connection between the evidence of request and receipt of benefits sought to be admitted and the issue regarding malingering. Declarations of doubtful relevancy must be excluded from evidence when interwoven with a matter universally recognized as prejudicial. *Kuhn v. Kjose,* 216 Iowa 36, 39, 248 N.W. 230 (1933). Like the trial court, we do not find the evidence of request and receipt of certain sums of worker's compensation benefits particularly relevant to the issue of malingering. We find that the trial court did not act improperly in keeping the defendant from entering this evidence into the record.

### III. Whether the trial court acted improperly in overruling defendant's motions for mistrial.

The defendant claims the trial court acted improperly in overruling his motions for mistrial where the plaintiff allegedly inquired into matters concerning defendant's liability insurance coverage. The first incident occurred as the plaintiff, Tom Carter, was answering questions posed to him on direct examination by his own attorney. The following is the relevant portion of defendant's direct testimony:

Q. Someone took you to the hospital, didn't they? A. Yes, sir.

Q. Okay. Do you know who that was? A. No, sir, I don't remember.

Q. Did they work for the Wiese Corporation? A. Yes, sir.

Q. They took you to the emergency room? A. Yes, sir.

Q. And did that person tell the people in the emergency room something when they brought you in? A. I don't know what they—you know, what he said.

Q. Did you hear him say something about who was going to take care of it? A. He said "Our insurance."

Q. What do you mean "Our insurance?"

The second incident occurred as plaintiff's attorney was questioning an expert witness on direct examination. The expert had been called to render an opinion on the amount of pure economic loss suffered by the plaintiff pursuant to the injuries he suffered when struck by the falling ladder. The following is an excerpt of that direct examination:

Q. Have you worked in arbitrating cases by agreement of all parties? A. Yes, I have.

Q. And tell us about your bankground there. Where was that and when was that? A. This is an experience which has developed over the past year and a half. On two different occasions I have been asked to arbitrate between an insurance company on the one hand and a plaintiff. One instance, it happened to be—in both instances, in fact, it was a wrongful death case.

█ The defendant objected at this point and properly preserved error on the issue by making his motion for a mistrial immediately after both of these incidents occurred. *See Randa v. U.S. Homes, Inc.,* 325 N.W.2d 905, 909 (Iowa Ct.App.1982).

The current Iowa law with regard to evidence of insurance coverage is set forth in *Evans v. Howard,* 231 N.W.2d 907, 914 (Iowa 1975) as follows:

The motion for mistrial was properly overruled. It remains true in a personal injury or death action evidence is generally inadmissible which informs the jury a defendant is insured against liability. It is generally improper for the subject of liability insurance to be raised in any way before the jury. However, it is no longer true that we will presume prejudice if the jury learns or is given reason to suspect an insurance company is inter-

ested in the result of the trial. We expressly rejected such a rule in *Price v. King*, 255 Iowa 314, 321–322, 122 N.W.2d 318, 322–323 (1963). There are circumstances under which such evidence is admissible.

*Id.* In *Evans, supra,* the questions asked of the witness had more substantial impact on the issue of liability insurance than the case at bar and the supreme court found that the trial court acted within its discretion in overruling a motion for a mistrial. The reference to insurance made by plaintiff's expert witness had no relevance to the issue of liability insurance coverage. These were not blatant references to coverage so as to inform the jury that the defendant was insured against liability.

For the defendant to be successful on this issue, he must show that he was prejudiced by the reference to coverage. It has been held that under Iowa law, absent a showing of prejudice, the introduction of insurance coverage into a negligence suit will not be critical. *Koppinger v. Cullen-Schiltz and Associates*, 513 F.2d 901, 910 (8th Cir.1975). It may be to show prejudice by proving that the jury improperly relied on such evidence in arriving at a verdict. *See id.; see also Moose v. Rich*, 253 N.W.2d 565 (Iowa 1977) (both cases discuss possible abuse of such information by a jury).

The defendant has made no sufficient showing of prejudice so as to succeed on this issue on appeal. The trial court was within its discretion in overruling defendant's motion for a new trial.

## IV. Whether trial court acted within its discretion in prohibiting further discussion of worker's compensation benefits after it was disclosed that benefits had been received, but the carrier was subrogated.

The defendant asserts that when mention was made of the fact that worker's compensation benefits had been received, but that the insurance carrier for the benefits was subrogated, the trial court committed reversible error when it prohibited further discussion of the worker's compensation aspects of this case. Defendant also asserts that his attorney should have been permitted to discuss during closing argument a settlement the plaintiff had reached with the insurance carrier by which the benefit amounts received would not necessarily have to be paid back.

Prior to the commencement of the trial, the plaintiff made a motion in limine seeking to keep out all reference to any request or receipt of worker's compensation benefits. The defendant resisted this motion, and sought to allow the introduction of this evidence, except it moved in limine to keep out any reference to subrogation or reasons why the insurance carrier chose to pay out benefits to the plaintiff, Tom Carter. The trial court overruled defendant's motion, stating that the worker's compensation issue would most likely be opened up but that it hadn't been ruled on yet. During opening statement the plaintiff's attorney made mention of the fact that benefits were received, but that the insurance carrier was subrogated. The defendant, in cross-examining Tom Carter, elicited testimony that the plaintiff had been receiving benefits. Defendant then asked if those payments amounted to "about $250.71 a week," whereupon plaintiff's counsel objected. The trial court made a final decision that no more reference was to be made of benefits requested or received by the plaintiff. The defendant's attorney, in discussion with the court, stated he wanted the worker's compensation information in only on the "malingering" issue. We previously discussed the admissibility of this type of evidence with reference to the issues of alleged malingering by the plaintiff and the fairness and reasonableness of Dr. Clay's charges for medical services. We held that the trial court did not err in disallowing this evidence for these purposes. The defendant has provided no additional reasons which would constitute error by the trial court in keeping this information out of the record. The trial court has discretion to keep out of the record what it believes to be irrelevant,

immaterial evidence. *Thompson v. Bohlken*, 312 N.W.2d 501, 509 (Iowa 1981); *Mercer v. Chi*, 282 N.W.2d 697, 700 (Iowa 1979). A trial judge can and should exclude evidence when convinced it will create a danger of prejudice outweighing its probative value. *E.I. du Pont de Nemours v. Berkley & Co., Inc.*, 620 F.2d 1247, 1272 (8th Cir.1980) (discussing Fed.R.Evid. 403; identical to Iowa R.Evid. 403). The judge has wide discretion in ruling on the admissibility of evidence; his decisions will not be disturbed "unless there is a clear and prejudicial abuse of discretion." *Id.; Henkel v. R. and S. Bottling Co.*, 323 N.W.2d 185, 193 (Iowa 1982).

■■■ An appellate court will not disturb the exercise by the trial court of its discretion as to the arguments of counsel unless there has been an abuse of that discretion. *See* C.J.S. *Appeal & Error* § 1611 (1958). The court has discretion to limit the scope of discussion of attorneys on matters delved into on closing argument. *See id.* The trial court, as we held previously, was within its wide discretion in allowing into evidence any subsequent reference to worker's compensation beyond what defendant had discussed on opening statement and what defendant mentioned when cross-examining Tom Carter. Likewise, it was proper for the trial court to limit the defendant on closing argument so as to remain consistent with this prior ruling.

## V.  Whether the instructions should have included reference to the settlement reached between plaintiff and his employer's insurance carrier.

The following instruction was given to the jury at the close of the evidence:

The plaintiff, Thomas E. Carter, has received worker's compensation benefits as a result of his injury. If he recovers damages from the Wiese Corp., monies received for worker's compensation benefits *must be repaid* to the payor of such benefits. The fact that the plaintiff has received such benefits should not be considered by you in determining whether plaintiff should recover damages from the Wiese Corp., or the amount of such damages, if any. (emphasis added.)

Defendant objected to the use of the phrase "must be repaid" in that it indicated it was mandatory that the insurance carrier receive an amount, equal to the sum of benefits paid to Tom Carter, off the top of any damage award which might be made to the plaintiff. Defendant felt that the jury should be made aware that the insurance carrier and plaintiff could reach whatever agreement they desired concerning the receipt of worker's compensation benefits.

■■■ We recognize that under Iowa law it is reversible error to submit an instruction advising the jury that a certain fact is undisputed when there is conflicting evidence on the question. *Locksley v. Anesthesiologists of Cedar Rapids*, 333 N.W.2d 451, 455 (Iowa 1983); *Morgan v. Barnard*, 82 N.W.2d 765, 775 (Iowa 1957). However, the case at bar can easily be distinguished from the two above-cited authorities. In the above-mentioned cases there was conflicting evidence in the trial court record as to matters which the instructions described as indisputable. The alleged error that the defendant is complaining about involves a matter that never came before the jury. The jury was completely unaware of any settlement negotiations. There was no information presented on appeal to suggest that any settlement had been finalized between the plaintiff and the insurance carrier. All that was mentioned between the parties' attorneys and the judge was that the plaintiff was willing to accept what had previously been offered by the carrier.

■■■ Citing an Iowa case as authority, Corpus Juris Secundum states that "[u]nless an abuse of discretion is clearly shown, an appellate court will not disturb the exercise by the trial court of its discretion with reference to ... the form and content of instructions ..." 5A C.J.S. *Appeal & Error* § 1613 (1958) (citing to *Ness v. H.M. Iltis Lumber Co.*, 256 Iowa 588, 128 N.W.2d 237 (1964), (case citation is found in the 1984 cumulative pocket supplement)). For the purpose of instructing

on the current state of the law in Iowa, and as much of a recitation of the law as the evidence in record demands, the trial court did not abuse its discretion in using the phrase "must be repaid" in its instruction 10 to the jurors. In a subparagraph of the Worker's Compensation Chapter, it is written:

"If compensation is paid to employee or dependent or trustee under this chapter, the employer by whom the same was paid *shall be indemnified* out of the recovery of damages to the extent of the payment so made, with legal interest, except for such attorneys fees as shall be allowed, by the district court, to the injured employee's or his personal representative's attorney, and *shall have a lien* on the claim for such recovery and the judgment thereon for the compensation for which he is liable ..." (emphasis added).

Iowa Code § 85.22(1) (1983).

Parties to a lawsuit have a right to have their legal theories submitted to the jury so long as they are supported by the pleadings and substantial evidence. *Anderson v. Low Rent Housing Commission of Muscatine*, 304 N.W.2d 239, 249 (Iowa 1981), *cert. denied* 454 U.S. 1086, 102 S.Ct. 645, 70 L.Ed.2d 621 (1982). The settlement negotiations, much less a final decision, were not before the jury in the record. The trial judge did not abuse his wide discretion in instructing the jury on the law to be applied in this case. The phrase "must be repaid" is a reasonable interpretation of Iowa law in the context of a worker's compensation carrier's interest in a lawsuit by an injured employee against an allegedly negligent third party.

## VI. Whether the foundation was inadequate to admit plaintiff's expert economist opinion concerning economic loss.

The defendant claims that plaintiff's economist, Wayne E. Newkirk, had no adequate basis for rendering an opinion as to the value of plaintiff's lost activity in and around the home to the date of trial and for plaintiff's future life expectancy. Defendant further claims that these opinions were improperly based on speculation, conjecture and misinformation, rather than fact. All the evidence regarding Mr. Newkirk's expert opinion as to the damages suffered by the plaintiff were made a part of the record over the objections of defendant's counsel.

In the Iowa Rules of Evidence it is stated that:

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected, and ... [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, *stating the specific ground of objection,* if the specific ground was not apparent from the context ... (emphasis added).

Iowa R. of Evid. 103(a)(1)(1983). When a party seeks to exclude evidence, the specific grounds of objection need to be indicated to the trial court. This is so as to alert the judge to the question raised and further to enable opposing counsel to take remedial steps to cure the alleged defect. *State v. Pardock*, 215 N.W.2d 344, 348 (Iowa 1974). The Supreme Court of Iowa has held that where the objection to evidence is based on a claim of "no proper foundation" but does not state in what respect(s) the foundation is lacking, the objection is insufficient to provide a basis for review on appeal. *Thompson v. Bohlken*, 312 N.W.2d 501, 509 (Iowa 1981); *Shinrone, Inc. v. Tasco, Inc.*, 283 N.W.2d 280, 288 (Iowa 1979). Therefore, to the portions of defendant's objections based solely on the ground that Mr. Newkirk's opinion was "without a proper foundation," defendant has failed to preserve error. Defendant also urges that the trial court committed reversible error when it allowed into evidence some charts that Mr. Newkirk had testified from. These charts were a summary of plaintiff's expert economist's opinion, and the data contained in them was derived in part from sources not present at the time of trial. The data was derived from facts and figures contained in outside reports that Mr. Newkirk relied on in arriving at his opinion

as to plaintiff's total pure economic loss. Iowa Rule of Evidence 703 states the following:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the trial or hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Iowa R. of Evid. 703 (1983). Mr. Newkirk gave his opinion based on these reports, and he specifically testified that it was not unusual to rely on this type of information. He also testified that he had spoken with the plaintiff, Tom Carter, and so had personal knowledge of the incident which gave rise to the lawsuit.

It is reasonable to assume that an expert in a science is competent to judge the reliability of statements made to him by other investigators or technicians. He is just as competent indeed to do this as a judge and jury are to pass upon the credibility of an ordinary witness on the stand. If the statements, then, are attested by the expert as the basis for a judgment upon which he would act in the practice of his profession, it seems that they should ordinarily be a sufficient basis even standing alone for his direct expression of professional opinion on the stand, and this argument is reinforced when the opinion is founded not only upon reports but also in part upon the expert's firsthand observation.

McCormick, *Law of Evidence* § 15 (2nd ed. 1972). Defendant's objections to the expert opinion and the additional material entered into evidence to aid the jury in understanding the opinion were properly overruled by the trial court.

**VII. Whether the jury's award of damages was excessive and should have been reduced.**

Additionally, the defendant appeals from the jury's verdict in favor of the plaintiff, in the amount of $117,500.00. If a new trial is not granted, defendant requests that the damage award be remitted by the amount of $84,647.79, which represents the amount of worker's compensation benefit received by the plaintiff, Tom Carter. We have previously discussed the treatment that the trial court gave to the issue of the worker's compensation benefits applied for and received by Mr. Carter. That discussion will not be repeated here. We reiterate however that we find that the trial court did not act improperly in its treatment of the subject.

As to the question of whether the damage amount awarded by the jury was excessive or not, we quote a statement from the case of *Schmitt v. Jenkins Truck Lines, Inc.,* 170 N.W.2d 632 (Iowa 1969). The portion of the opinion relevant to our discussion reads as follows:

It is not for us to invade the province of the jury. In fact a verdict will not be set aside or altered unless it is, (1) flagrantly excessive or inadequate; or (2) so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is the result of passion, prejudice or other ulterior motive; or (4) is lacking in evidential support.

*Id.* at 659. Similarly, the Iowa Supreme Court has also stated that "[t]he assessment of damages is traditionally a jury function and courts intervene only for compelling reasons. Where a verdict is within the evidence we will not disturb the jury's award." *Haumersen v. Ford Motor Co.,* 257 N.W.2d 7, 16 (Iowa 1977).

We are cognizant of the fact that a new trial may be granted if a jury award is excessive or unsupported by sufficient evidence. *See* Iowa R. of Civ.Pro. 244(d)–(f) (1983). However, the jury verdict was well within the parameters of the admitted evidence. Plaintiffs' expert economist, Mr. Newkirk, testified that, in his opinion, Tom Carter had suffered pure economic losses totaling in excess of the jury award. Mr. Newkirk testified, given certain assumptions which could be accepted or rejected by the jury, that: (1) the value of plaintiffs' lost services around the home and yard to date was, in his opinion, $13,394; (2) that

the present value of plaintiffs' future services were, in his opinion, worth $120,159; (3) that the value of plaintiffs' lost income to date was worth, in his opinion, $43,557; and (4) the present value of plaintiffs' future income earning potential was, in the opinion of the expert economist, worth $309,852. These four figures added together comprise a total pure economic loss of $486,962.

■ Given the expert testimony, we conclude that the jury award was well within the evidence contained in the record. We are convinced that the dollar figure arrived at was not the result of passion, or prejudice, nor does it shock our conscience or sense of justice. The verdict is upheld on appeal.

### VIII. Whether the court erred in not admitting the testimony of a witness over a hearsay objection.

Defendant has made claim that the plaintiff, Tom Carter, had made a statement to the effect that plaintiff intended to take the money from whatever damage award he received in this case and buy a truck and resume truck driving. This statement was supposedly made to Doug Kinney and his wife, Rebecca, at a social occasion. Defendant's attorney became aware of the possibility that this statement was made while interviewing Doug's mother, Mrs. Erma Kinney, who was the plaintiff's former employer. Defendant put Doug Kinney on the stand and under oath he testified that he never heard Tom Carter make such a statement and denied every saying anything of the kind to his mother.

Rebecca Kinney testified under oath that she and her husband Doug were friends with Tom and Gloria Carter, but she denied ever hearing Tom Carter make the statement that he intended to take whatever money he gets out of this court case and buy a truck with it. She also denied telling her mother-in-law, Erma Kinney, that Tom Carter had made such a statement to her.

Erma Kinney was then called to testify concerning this matter outside the presence of the jury. She stated that two months

prior to trial her daughter-in-law, Rebecca Kinney, had said that Rebecca and Doug Kinney had been over to the Carters' home the evening before and that Tom Carter had mentioned he was going back into the trucking business, that he intended to take whatever money he got out of this lawsuit and buy a new truck. The court did not permit defendant to have Rebecca Kinney or Erma Kinney testify concerning these matters in the presence of the jury. The court excluded the testimony on the basis of hearsay.

■ The trial court acted properly in not permitting Erma Kinney to testify as to what she allegedly heard her daughter-in-law tell her concerning the plaintiff, Tom Carter, and any settlement award. Mrs. Kinney's proffered testimony constituted inadmissible hearsay. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Iowa R. of Evid. 801(c) (1983). Hence, Mrs. Erma Kinney's testimony as to what Rebecca Kinney told her falls within the express language of the rule and was properly excluded.

■ The defendant, in essence, desired to get the plaintiff's statement into evidence. Tom Carter denied ever making a statement about purchasing a truck with any award money and resuming truck driving. Doug Kinney denied that this statement was made to him. Rebecca Kinney denied that this statement was made to her. The statement was allegedly made at a social gathering where Mr. & Mrs. Tom Carter and Mr. & Mrs. Doug Kinney were present. The defendant wished to put on Erma Kinney in hopes of getting this statement into evidence, although she had no personal knowledge that plaintiff ever made such a statement. The common law has always insisted upon the most reliable sources of information for the purposes of proof. One of the earliest and most pervasive manifestations of this attitude is the rule requiring that a witness who testifies to a fact which can be perceived by the

senses must have had an opportunity to observe, and must have actually observed the fact. *See State v. Johnson*, 92 Idaho 533, 536, 447 P.2d 10, 13 (1968). The Iowa rules of evidence have addressed this issue:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. This rule is subject to the provisions of Iowa R.Evid. 703 relating to opinion testimony by expert witnesses.

Iowa R. of Evid. 602 (1983). The same requirement, in general, is imposed upon declarations coming in under exceptions to the hearsay rule, that is, the declarant must so far as appears have had an opportunity to observe the fact declared. McCormick, *Law of Evidence* § 10 (2nd Ed.1972).

Defendant argued that Tom Carter's alleged statement is admissible under a number of exceptions to the hearsay rule. It is claimed that the statement is an admission by a party opponent, a statement against interest, a prior inconsistent statement and, finally, that it can be used as an impeachment tool so as to test credibility. However, so long as Erma Kinney is without personal knowledge that the statement was ever made, its reliability is too speculative, in this particular instance, to allow it to come into evidence.

## IX. Whether the trial court abused its discretion in excluding testimony of an expert witness.

The defendant, Wiese Corporation, claims that the trial court committed reversible error, in that it abused its discretion in excluding the testimony of defendant's witness, Mr. Richard (Dick) Wynant. The exclusion was brought about as a sanction for not making Mr. Wynant sufficiently available for deposition.

On August 31, 1981, the plaintiff propounded several interrogatories to the defendant. Among these was an interrogatory which asked for: the name and address of each expert witness the defendant intended to call at the time of trial, the subject matter on which the expert would testify, the substance of the facts and opinions to which he was expected to testify and a summary of the grounds for each opinion. This particular interrogative statement was designated as "No. 3." On October 19, 1981, the defendant answered these particular interrogatories and stated, "This determination has not been made" as his response to No. 3. The defendant filed amended answers to this set of plaintiff's interrogatories on November 25, 1981, but his response to No. 3 remained the same. It was just prior to the date of the trial commencement that the defendant designated an expert by filing an amended answer to the August 31, 1981 interrogatories of the plaintiff. The trial date was set, by a court order, to commence on Tuesday, September 6, 1983. The national holiday designated as Labor Day fell on September 5, in 1983. Plaintiff's attorney was given notice on Thursday, September 1, 1983 that defendant planned to call Mr. Wynant as a witness. Defendant had Mr. Wynant available for deposition on Saturday, September 3, 1983. Plaintiff's counsel agreed to take Mr. Wynant's deposition at that time, but only on the condition that defendant would agree to stipulate that the defendant could not use Mr. Wynant's deposition testimony at trial. Defendant refused to so stipulate. Plaintiff filed his "Motion to Strike and Prohibit Testimony" on the first day of trial. The court suggested that defendant make Mr. Wynant available for deposition on the afternoon or evening of the first two days of trial, and defendant agreed to do that. Plaintiff's counsel refused the offer. The court then sustained plaintiff's motion and excluded Mr. Wynant from testifying at all. It was sometime in June of 1983 that defendant first contacted Mr. Wynant concerning this lawsuit. On August 31, 1983 the proposed witness was given all the information he would need in order to prepare his possible testimony. Defendant wished to call Mr. Wynant as a witness to rebut the testimony of plaintiff's expert on the subject of damages. The defendant

was aware for several months prior to the date of trial what the substance of plaintiff's expert, Mr. Newkirk's, testimony would entail.

Trial courts possess broad discretion with the imposition of discovery sanctions. *R.E. Morris Investments, Inc. v. Lind,* 304 N.W.2d 189, 191 (Iowa 1981); *Eickelberg v. Deere & Co.,* 276 N.W.2d 442, 446 (Iowa 1979); *Haumerson v. Ford Motor Co.,* 257 N.W.2d 7, 13–14 (Iowa 1977). The Iowa Supreme Court has been slow to find abuse of the trial court's discretion in discovery sanction cases. *Sullivan v. Chicago Northwestern Transportation Co.,* 326 N.W.2d 320, 324 (Iowa 1982). In *Sullivan* at 324, the supreme court affirmed the sanctions of the trial court in excluding testimony for failure to disclose witnesses until three weeks prior to trial, despite the fact there were no discovery orders. Here the defendant did not amend his answer to interrogatory No. 3, to name his rebuttal witness, until one business day before trial. He was aware of the subject matter of plaintiff's expert witness months previous. The discovery sanctions were not too severe. The imposition of such sanctions will not be reversed on appeal unless there has been an abuse of discretion. *Sandhorst v. Mauk's Transfer, Inc.,* 252 N.W.2d 393, 399 (Iowa 1977).

We recognize that discovery standards are designed to implement, not to impede, fair and speedy determinations of cases, it is suggested "that the court should seek to apply sanctions which affect the evidence at trial and the merits of the case as little as possible ..." *State v. Marchellino,* 304 N.W.2d 252, 257 (Iowa 1981) (quoting ABA Standards for Criminal Justice, Discovery and Procedure Before Trial, § 5.1, Commentary, at 108 (1970)). In exercising its discretion in selection of sanctions for failure to comply with discovery orders, the court should keep in mind that "radical surgery should not be performed on the ... case if conservative therapy will bring about a cure." *State v. St. John,* 308 N.W.2d 8, 11 (Iowa 1981) (quoting *State v. Marchellino,* 304 N.W.2d at 257).

Plaintiff moved the court to apply discovery sanctions in a motion titled "Motion to Strike and Prohibit the Testimony of Wynant." This motion was filed on the first day of trial. Defendant wished to employ Dick Wynant as a rebuttal witness. Defendant claims that he could not amend his answer to interrogatory No. 3 because Wynant had not had a chance to observe the testimony of plaintiff's expert, Mr. Newkirk, and therefore would not know the facts and opinion of his proposed testimony. He further claims that exclusion of Mr. Wynant's testimony as a discovery sanction was too strict and unnecessary. The sanction is no less severe than sanctions approved by the supreme court in *Wernimont v. International Harvester Corp.,* 309 N.W.2d 137 (Iowa Ct.App.1981). In *Wernimont* the plaintiffs had been asked, in interrogatories filed January 28, 1977, to list the names of experts they expected to call to testify on their behalf. Plaintiffs failed to respond and on June 29, 1977, plaintiffs were ordered to answer interrogatories in 20 days. Plaintiffs filed answers on September 2, 1977, but continued to fail to list their experts, which prompted a second set of motions. Following a pretrial conference on April 2, 1979, the trial court gave plaintiffs until April 12 to answer. Plaintiffs answered on April 16 and defendants asked for sanctions, which were granted, prohibiting plaintiffs from calling their listed expert or any other expert to the issue of liability. The court found no abuse of discretion in the imposition of such sanctions. *Id.* at 143–44.

The defendant was aware of plaintiff's expert, Mr. Newkirk's, proposed testimony. Defendant could have made plaintiffs more aware of what Mr. Wynant was supposedly going to testify in regards to.

The trial court did not abuse its discretion in not allowing the witness to testify.

**X. Whether the evidence of record was sufficient to support submitting the issue of plaintiffs' negligence to the jury.**

On appeal, plaintiffs assert that the evidence was insufficient to support the submission of the issue of plaintiff, Tom Car-

ter's negligence to the jury. The trial court submitted instructions on three (3) theories of negligence against the plaintiff: (1) failure to keep a proper lookout; (2) failure to wear a hard hat; and (3) standing in front of or underneath the ladder. The plaintiff objected to the court's instructions on these specifications of negligence for the reason that there was insufficient evidence to generate a jury question. The instructions were submitted by the court and the jury found the plaintiff was ten (10) percent comparatively negligent. Thereafter, plaintiff filed a motion to set aside that portion of the verdict which had to do with plaintiff's negligence and the motion was overruled.

■ Parties to a lawsuit have a right to have their legal theories submitted to the jury so long as they are supported by the pleadings and substantial evidence. *Lockard v. Carson*, 287 N.W.2d 871, 875 (Iowa 1980). Even though evidence may not be in dispute, it is viewed in a light most favorable to the party requesting the instruction. *Anderson v. Low Rent Housing Commission of Muscatine*, 304 N.W.2d 239, 249 (Iowa 1981), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 645, 70 L.Ed.2d 621 (1982). If reasonable minds might draw differing inferences, a jury question is engendered. *Id.*

Mike Flynn, the maintenance foreman for the defendant, testified that he set the ladder up against the hoist, that he climbed up the ladder, and that he reset the breaker switch on the safety feature of the crane. He further testified that he requested that power be turned back on to the electric crane, asked Roger Neuhalfen to attempt to operate it to see if all was working properly. When Mr. Neuhalfen moved the hoist, the ladder slid away and began to fall. Tom Carter testified that while all these events were occurring near the back of the truck trailer, he was located at the front of the trailer picking up hold-down chains and binders and hanging them on the inside front portion of the trailer. When the ladder began to fall, plaintiff was not looking in its direction, nor paying attention to the activity which caused it to fall away from the hoist. He was facing the opposite direction, stooped over and in front of where the ladder would naturally fall if it became dislodged. In addition, Mr. Carter did not have a hard hat on at the time of the injury. He owned one at the time of the accident, and was aware that Wiese Corporation had additional hats available to drivers. Signs were posted on the defendant's premises stating that hard hats were required, and all the employees of Wiese Corporation were wearing helmets at the time.

■ "Contributory negligence involves conduct which creates an unreasonable risk of harm to ones self or ones own interests." *Board of Water Works Trustees of the City of Des Moines, Iowa v. Alvord, Burdick & Howson*, 706 F.2d 820, 825 (8th Cir.1983) (citing S.F. Harper and F. James, *The Law of Facts* § 22.10, at 1227 (1956)). Whether a person is negligent for failing to anticipate the negligence of others is to be determined by the application of the reasonable person test, i.e., whether a reasonable person of ordinary prudence in like circumstances would have taken precautions against the negligence of another. *Id.*

> [T]he hypothetical reasonable man ... is required to realize that there will be a certain amount of negligence in the world. In general, where the risk is relatively slight, he is free to proceed upon the assumption that other people will exercise proper care.... But when the risk becomes a serious one, either because the threatened him is great, or because there is an especial likelihood that it will occur, reasonable care may demand precautions against "that occasional negligence which is one of the ordinary incidents of human life and therefore to be anticipated."

W. Prosser, Handbook of the Law of *Torts* § 33 at 170–71 (4th ed. 1971).

■ Whether Tom Carter exercised reasonable care to prevent injuries to his person, in the above-described circumstances, is something reasonable minds might differ

upon. There was, therefore, sufficient evidence in the record to generate a jury question.

For all of the above reasons we would affirm the judgment of the trial court.

AFFIRMED.