Robin L. STRAIN, As Guardian and Next Friend of Adam Strain, A Minor, Appellant,

v.

Wayne HEINSSEN, Appellee.

No. 87–748.

Supreme Court of Iowa.

Jan. 25, 1989.

Rehearing Denied Feb. 20, 1989.

Daniel B. Cullan, Edward H. Jelinek, and Gene M. Cullan, Cullan Law Firm, Des Moines, for appellant.

Thomas J. Shomaker of Sodoro, Daly & Sodoro, Omaha, Neb., Richard D. Crotty, Council Bluffs, and John A. McClintock and David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellee.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, NEUMAN and ANDREASEN, JJ.

NEUMAN, Justice.

Plaintiff Robin Strain has a son, Adam, who suffers from brain damage. Strain sued the physician attending Adam's birth, defendant Wayne Heinssen, for his alleged negligence stemming from prescribing drugs to induce labor, failure to perform a caesarean section, and failure to observe signs of fetal oxygen depletion. After a ten-day trial, a jury hearing the evidence in support of Strain's claim returned a verdict in Dr. Heinssen's favor.

On appeal from judgment entered on the jury's verdict, Strain claims the district court abused its discretion in connection with two rulings. First, she claims the trial court erroneously refused to allow her attorney to cross-examine two expert witnesses concerning their employment by Dr. Heinssen's malpractice insurer. Second, she claims the trial court erroneously overruled her motion for mistrial after defense counsel, in the jury's presence, projected on a screen the preface to a medical text objected to as unauthoritative and not admitted into evidence.

We transferred the case to the court of appeals. It found no merit in Strain's motion for mistrial, but it reversed and remanded for new trial on the cross-examination issue. On further review challenging solely the court of appeals decision on the evidentiary question, we find no abuse of trial court discretion warranting reversal. Accordingly, we vacate the court of appeals decision and affirm the district court.

The controversy before us began when Strain moved for a ruling in advance of trial concerning the scope of her counsel's cross-examination of Dr. Heinssen's expert witnesses, physicians Farb and Elston. Specifically, Strain sought to show that Dr. Farb and Dr. Elston were both hired, not by the defendant, but by his malpractice liability carrier, The St. Paul Fire & Marine Insurance Company (St. Paul). More importantly, Strain wanted to cross-examine Dr. Farb concerning an opinion he gave in a prior medical malpractice case. In that case Dr. Farb reportedly testified on behalf of the defendant doctor who later admitted negligence and settled the case out of court for a substantial sum.

Only through this testimony, Strain claimed, could she reveal the bias of these witnesses as "hired guns" for Dr. Heinssen's insurance carrier. The trial court disagreed. It ruled that Strain's counsel could cross-examine the doctors generally concerning the frequency with which they had previously testified on behalf of doctors in other malpractice cases, including whether that testimony supported the plaintiff or the defense, but could not inquire concerning the experts' employment by a named insurance company or delve into opinions given by these experts in unrelated cases.

Familiar rules guide the appellate review of such a trial court ruling on the admissibility of evidence. Ordinarily, the scope of cross-examination rests within the trial court's broad discretion. *Campbell v. Van Roekel*, 347 N.W.2d 406, 411 (Iowa 1984). Reversal is called for only if there has been an abuse of discretion by the trial court

and then only if it appears that prejudice has resulted. *Id.; see also Renze Hybrids, Inc. v. Shell Oil Co.*, 418 N.W.2d 634, 639 (Iowa 1988) (decisions on admissibility of expert opinion testimony will not be overturned "unless they exhibit a manifest abuse of discretion to the prejudice of the complaining party").

In its initial look at this case, the court of appeals decided that Iowa Rule of Evidence 411 expressly authorizes the introduction of the type of evidence proposed by Strain and that the trial court's refusal to allow it compelled reversal under *Charter v. Chleborad*, 551 F.2d 246, 249 (8th Cir.), *cert. denied*, 434 U.S. 856, 98 S.Ct. 176, 54 L.Ed. 2d 128 (1977). On further review, however, we are convinced that both rule 411 and the *Charter* decision leave a good deal of room for trial court discretion in such evidentiary matters and that discretion was not abused by the trial court here.

Iowa Rule of Evidence 411 provides:

Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

Prior to the enactment of the rules of evidence, the Iowa common law held that it was "generally improper for the subject of liability insurance to be raised in any way before the jury." *Evans v. Howard R. Green Co.*, 231 N.W.2d 907, 914 (Iowa 1975); *Price v. King*, 255 Iowa 314, 322, 122 N.W.2d 318, 323 (1963). That attitude has persisted with the adoption of rule 411. *See Carter v. Wiese Corp.*, 360 N.W.2d 122, 129 (Iowa App.1984); *see also Charter*, 551 F.2d at 248 (construing federal rule of evidence 411, identical to Iowa rule 411).

The rationale for the rule is that evidence of insurance is rarely probative and frequently prejudicial. *Carter*, 360 N.W.2d at 129; *see Charter*, 551 F.2d at 248. The prejudice stems from concern that a jury's verdict may be increased or decreased depending on the availability of sums from which to pay an award, rather than the merits of a plaintiff's case. *See Ouachita Nat'l Bank v. Tosco Corp.*, 686 F.2d 1291, 1301 (8th Cir.1982); Fed.R.Evid. 411 advisory committee's note (*reprinted in* 10 J. Moore, *Moore's Federal Practice* § 411.01[3], at IV–197 (1988)).

Nevertheless, under both rule 411 and the common law, insurance coverage may be revealed to show evidence of bias or prejudice, particularly where used to impeach a witness who is an employee or agent of the insurer. *See, e.g., Charter*, 551 F.2d at 248; *Mihalovich v. Appanoose County*, 217 N.W.2d 564, 568 (Iowa 1974); *Aguilera v. Reynolds Well Service, Inc.*, 234 S.W.2d 282, 284–85 (Tex.Civ.App.1950). The application of this exception is demonstrated by the *Charter* case on which the court of appeals relied for reversal. There the plaintiff's malpractice action rested heavily on the testimony of one orthopedic surgeon. The credibility of that surgeon's testimony was severely impeached by a defense witness who testified that the surgeon's reputation for truth and veracity was bad. Cross-examination revealed that the defense witness, an attorney, defended insurance companies in medical malpractice cases. The trial court then sustained an objection to any further inquiry about whether the attorney regularly represented the insurance carrier for the defendant doctor, a fact later asserted in a motion for new trial. *See Charter*, 551 F.2d at 248.

On appeal, the Eighth Circuit Court of Appeals held that the fact the witness was employed as an attorney for the doctor's insurer was "clearly admissible to show possible bias of that witness." *Id.* In its view, the probative value of the evidence far outweighed any danger of unfair prejudice. *Id.* at 249. Moreover, because the plaintiff's case rested almost exclusively on the credibility of the impeached witness, the trial court exceeded the bounds of mere harmless error when it refused to allow further evidence that might reveal the potential bias of that expert's chief critic. *Id.* at 249.

The *Charter* case, though persuasively reasoned, is factually distinct from the case

before us. While the experts in the present case disagreed over the standard of care exercised by Dr. Heinssen, there is no suggestion that Farb or Elston's testimony sought to impeach the credibility of Strain's expert. More importantly, the Farb and Elston relationship with St. Paul may be readily distinguished from the attorney-client relationship established in *Charter* and the closer witness-insurer relationships underlying other cases relied upon by Strain to extend her right of cross-examination. *See Ouachita Nat'l Bank,* 686 F.2d at 1301 (defendant intended to call agent of its insurer as witness); *Hinton & Sons v. Strahan,* 266 Ala. 307, 313–14, 96 So.2d 426, 430 (1957) (witness was employee of company run by president of defendant's insurer); *Aguilera,* 234 S.W.2d at 284–85 (witness was agent of defendant's insurer); *cf. Mihalovich,* 217 N.W.2d at 568 (evidence of insurance admissible to show county made its insurance agent the agent for service of process on county).

The record before us discloses no evidence that the relationship between Farb, Elston, and St. Paul is closer than that of any other experts and the insurer calling them in a malpractice case. Beyond mere payment in exchange for testimony in this trial (and in Dr. Farb's case, a handful of other trials), no agency or employment relationship was established. We are aware of at least one jurisdiction that has specifically refused to extend the rule 411 exception under such circumstances, and we concur in its reasoning. *See Davila v. Bodelson,* 103 N.M. 243, 251, 704 P.2d 1119, 1126 (N.M.App.1985).

Finally, we think the trial court reasonably balanced the questions of relevancy, probative value and prejudice implicated when the revelation of insurance coverage is at issue. Under Iowa Rule of Evidence 401, evidence is relevant if it has a tendency to make a fact of consequence more or less probable. *State v. Plaster,* 424 N.W. 2d 226, 229 (Iowa 1988). Here the trial court allowed Strain wide latitude to question the defense witnesses about whether they were paid to testify and the frequency with which they testify for doctors in malpractice cases. It was obvious on whose behalf they were testifying. On this issue of "disinterestedness," we think the relevant evidence is not *who* paid for their testimony but the fact it was procured through a promise of compensation by the defense. *See Texas Co. v. Betterton,* 126 Tex. 359, 361–62, 88 S.W.2d 1039, 1039–40 (1936) (while contents of written statement relevant, fact that insurance agent prepared statement was not relevant and was therefore inadmissible); *cf. Carter,* 360 N.W.2d at 129 (evidence of receipt of workers' compensation benefits irrelevant to issue of malingering).

As for the potentially prejudicial impact of revealing insurance coverage, we think the trial court reasonably balanced the competing interests in accordance with Iowa Rule of Evidence 403. Where, as here, the plaintiff is the parent of a brain damaged child who faces a lifetime of expense for the child's care and treatment, the potential for jury sympathy would be understandably high. The corresponding danger that such sympathy would translate into a higher verdict if the fact of insurance coverage were revealed to the jurors, rather than just suspected by them, justified the cautious approach demonstrated by the trial court. In other words, the district court reasonably excluded the evidence of insurance because it had doubtful relevance and was "interwoven with a matter universally recognized as prejudicial." *See Carter,* 360 N.W.2d at 129.

In summary, we reject the suggestion implicit in the court of appeals decision that would have us require the revelation of insurance in *all* cases where an insurance company has paid an expert for testimony. We are convinced such an expansion of the exception to rule 411 would swallow up the rule itself. We find no abuse of discretion in the trial court's refusal to do so here.

COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED.