**STATE of Iowa, Appellee,**

v.

**William Russell CLAY, Appellant.**

No. 55984.

Supreme Court of Iowa.

Dec. 19, 1973.

Charles A. Stream, Oskaloosa, for appellant. ·

Richard C. Turner, Atty. Gen., Thomas D. McGrane, Asst. Atty. Gen., Glenn M. Bradley, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND and UHLENHOPP, JJ.

MASON, Justice.

William Russell Clay was charged by county attorney's information with the crime of breaking and entering Powell's Hardware Store in South English, Iowa, on or about November 18, 1971, with intent to commit a public offense, to wit: larceny contrary to section 708.8, The Code, 1971. He appeals from judgment sentencing him to the Men's Reformatory for a term not to exceed ten years following conviction by a jury of the offense charged.

In the early morning hours of November 18, 1971, first Atha Trusler, and then her husband, Ross, noticed a dark colored car parked in the street in the business district of South English in Keokuk County. Two men were then observed by Mrs. Trusler walking down the street; a short time later she saw these same men moving about in the back of Powell's Hardware Store. After Mr. Trusler had joined her at the picture window of their apartment she called the sheriff. At least one of the men backed away from the hardware store and placed what appeared to be a pane of glass on the ground. Upon later examination of the premises by Mr. Powell, owner of the store, part of the glass from a back window of the store was found missing.

The sheriff and his deputy arrived shortly thereafter. Sheriff Wallerich examined part of the nearby lumberyard and observed nothing unusual. After talking with the Truslers and Deputy Merz he drove up to a black Ford parked about one block away. In the meantime, Merz, as he drove along an alley running east and west along the south edge of the lumberyard, observed someone running north in another alley. After ordering the person to halt through his public address system, and having him fail to do so, Merz pursued this person on foot and eventually caught him. This person was defendant. A search for a second person seen running from the scene was unsuccessful.

At trial the night deputy for North English, a town just a few miles from South English, testified that while on patrol in North English approximately one hour earlier on this same evening he had stopped a black Ford driven by defendant and suggested that he return home. A passenger in defendant's car at this time was one Ayers. The car driven by defendant was the same car noticed approximately one block from the scene of the break in in South English a short time later.

Powell testified that before he closed the hardware store the evening of November 17 he made his customary record of the contents of the cash register located in the center of the store. When he left around five o'clock the doors to the building were locked. Powell further testified his investigation of the premises when he returned to the scene in the early morning hours of November 18 in response to a telephone call disclosed not only that the glass had been removed from a rear window but the back door was also open and $19.75 was missing from the register.

Hamill Robison, manager of the lumberyard next to the Powell store, testified that when he left the lumberyard November 17 the doors had been locked and all windows had been closed. Upon inspection of the yard after arriving there around 2:30 the morning of November 18 he found the bottom panel of a walk-in door which led to the yard proper "had been kicked in." The witness also found a door from the alleyway of the lumberyard to the office had

been demolished. He expressed the view the door had been broken by the use of a heavy object. Robison found one of his sledge hammers approximately three feet from the door.

Mrs. Trusler identified defendant as the same person she had seen walking down the street in South English in the early morning hours. No one actually saw any person inside either the lumberyard or Powell's store.

Some time after defendant had been incarcerated in the county jail, and the passenger of his car, Ayers, had also been arrested and placed in jail, Sheriff Wallerich overheard a conversation between them. Due to their separation the two men literally shouted to each other in order to communicate. This conversation was easily overheard by the sheriff. It included and referred to various things which had occurred on the early morning of November 18.

Defendant's appeal is primarily based on two grounds: (1) improper admission of evidence over his timely and sufficient objection and (2) failure to grant a directed verdict because of insufficient evidence in regard to the element of intent.

He assigns eight errors upon which he relies for reversal or new trial. Five of these asserted errors involve the trial court's overruling his objections to questions propounded to the State's witnesses and defendant's motions to strike testimony received in response thereto.

The five evidentiary issues will be considered first since it is well settled that on defendant's appeal from criminal conviction based on jury verdict challenging sufficiency of evidence to sustain the verdict, this court views the evidence in the light most favorable to the State and accepts as established all reasonable inferences tending to support the jury's action. It is necessary to consider only the supporting evidence whether contradicted or not. It is for the fact finder, not us, to re-solve questions of fact and determine the credibility of witnesses. And a finding of guilt is binding on this court unless without substantial support in the record, or is clearly against the weight thereof. State v. Still, 208 N.W.2d 887, 888 (Iowa 1973).

I. One of defendant's assignments concerns the testimony of Ronald H. Cox, a night marshall in North English, who was called as a State's witness. Cox testified that while patrolling in North English around 1:30 a.m. November 18 he observed and shortly thereafter stopped a 1968 black Ford automobile being driven by defendant. He further testified as to the owner of the car and a conversation had with defendant at this time. Defense counsel objected five times on the grounds of incompetency, irrelevancy and immateriality. Each objection was overruled. Counsel objected three times on the basis of opinion and conclusions and once in regard to best evidence; these objections were in regard to testimony calling for the make, model and owner of the car. All were overruled by the court.

Defendant's counsel on appeal who had not represented him at trial relies only on the grounds of relevancy and immateriality in support of this assignment as well as the contentions asserted in his fourth, fifth, sixth and seventh assignments.

As pointed out, trial counsel had used the terms "incompetent, irrelevant and immaterial" in urging exclusion of the challenged evidence.

The form of defendant's objections raises the issue whether such objections preserved any question for review in this court.

The general rule is that unless the reasons for an objection are obvious one attempting to exclude evidence whether the attempted exclusion is by objection or motion has the duty to indicate the specific grounds to the court so as to alert the judge to the question raised and enable opposing counsel to take proper corrective

measures to remedy the defect, if possible. State v. Williams, 207 N.W.2d 98, 109–110 (Iowa 1973). The general objection of "incompetent, irrelevant and immaterial" is not sufficiently specific in calling the court's attention to the reason the proposed evidence is inadmissible when reliance is placed by the objector upon incompetency. The evidence may be thought to be incompetent on many different grounds which may or may not appear on the surface and the court to which it is offered is entitled to know on what grounds its competency is challenged. Ferris v. Riley, 251 Iowa 400, 410, 101 N.W.2d 176, 182.

■ "The word 'incompetent' as applied to evidence means no more than inadmissible, and thus cannot be said to state a ground of objection." McCormick on Evidence, Second Edition, section 52. It is condemned for lack of precision.

■ As respects objection to testimony the terms "immaterial and irrelevant" are used interchangeably; but "immaterial" more precisely denotes evidence which is offered to prove a proposition not at issue, while "irrelevant" denotes evidence which does not logically tend to establish any material proposition. See State v. Wilson, 173 N.W.2d 563, 565 (Iowa 1970) and authorities cited.

Stated somewhat differently, "materiality ordinarily relates to the pertinency of offered evidence to the issue in dispute or to the issue of credibility. An objection that evidence is immaterial specifically raises that point, and additional words add little more. Relevancy on the other hand, relates to the probative value of evidence in relation to the purpose for which it is offered." Ladd, Objections, Motions and Foundation Testimony, 43 Cornell L.Q. 543, 547.

■ The objections, "irrelevant and immaterial," when admissibility of evidence is challenged in the trial court on either of those grounds are sufficiently specific to raise the issue in this court.

■ The law of evidence does teach what evidentiary facts are incompetent because in violation of the exclusionary rules. But as to irrelevant and immaterial matters logic and the reasoning processes are the only tests.

Dean Ladd at page 546 of the law review article just cited suggests, "The label 'general objection' is misleading because what is designated as a general objection is in fact a very specific objection commonly used to test relevancy and materiality. * * * While the wording [incompetent, irrelevant and immaterial] may appear to be a 'catch-all,' it strikes basically at the materiality of offered proof and its relevancy. It is questionable whether other words could be more specific to raise these issues than those employed in the general objection." Ladd, Objections, Motions and Foundation Testimony, 43 Cornell L.Q. at 546.

The General Editor and contributing authors expressed the same view in the second edition of McCormick on Evidence, section 52, where it is said, " * * * [T]he terms, 'irrelevant and immaterial,' do state, though in general terms, a distinct and substantial ground for exclusion."

Both Ladd and McCormick suggest that if the court or counsel has any doubt of relevancy or fails to see the application they can ask the objector to explain his challenge of relevancy or ask the proponent to state the purpose of the proof which is offered. The court and opposing counsel would be thus alerted to the question raised by the objection.

■ In our opinion defendant's objections urged in the matter before us were sufficient to raise the issue in this court as to the relevancy and materiality of the evidence questioned.

We therefore pass to the merits of defendant's objections.

Cox's testimony, set out supra in this division, placing defendant in the black Ford

involved an hour earlier renders the inference defendant was one of the two men observed later by Mrs. Trusler removing what appeared to her to be a pane of glass from a rear window of Powell's store more probable than it would have been without such testimony.

█ The trial court was correct in its ruling on defendant's objections to Cox's testimony.

II. Another of defendant's assignments relates to the testimony of Hamill Robison, manager of Farmers Grain and Lumber Company of South English. Counsel objected to Robison's testimony concerning the security conditions at the yard and condition of various doors to the structure when the witness left the lumberyard the late afternoon of November 17. The objection asserted the question called for the opinion and conclusion of the witness and was incompetent, immaterial and irrelevant. No further objections were made.

█ The witness, as manager, was qualified to state security conditions of the yard.

As pointed out, defendant on appeal argues only the question of relevancy and materiality.

█ The question objected to was actually preliminary in nature. However, Robison's later testimony describing the conditions found at the yard when he returned around 2:30 the morning of November 18 came into the record without objection. Such evidence was relevant as bearing on defendant's flight from the scene of the crime as well as his intent in breaking and entering Powell's nearby hardware store.

The State had charged defendant had the intent to commit larceny at the time of breaking and entering Powell's store. At no point does defendant contend his intent was not an issue. As a matter of fact, his motion for directed verdict which will be considered in a later division of this opinion was based on the claim the State had failed to generate a jury question on such intent.

The following statements of law are articulated in State v. Wright, 191 N.W.2d 638, 639–640 (Iowa 1971):

" * * * The general principle is that evidence to show the commission of crimes other than the one with which a defendant stands charged is inadmissible. * * * [citing authorities]

"There are a number of recognized exceptions to this exclusionary rule which permit the use of otherwise prohibited evidence if it tends to prove an element of the crime for which the defendant is then on trial, even though it also—incidentally—establishes the commission of another offense. We cite only several of the numerous cases which support this rule. * * * [citing authorities]."

In State v. Fetters, 202 N.W.2d 84, 91–92 (Iowa 1972) we noted that, "These exceptions permit reception of evidence of other reasonably similar or like offenses by defendant to the one on which the prosecution is based to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) common scheme embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others, and (5) the identity of the person charged with the commission of the crime on trial. * * * [citing authorities]

" * * *

"In order to be relevant to the issues, the other offenses of which testimony can be offered must, as stated, be reasonably similar to the act on which the prosecution is based. There must be such connection between the offense charged and the other offenses that the latter can reasonably be said to tend to establish the first, or some essential fact in issue. In other words, the other offenses must be wrongful acts, crimes, offenses or attempted offenses of a like nature to the charge against accused.

Right conduct, lawful acts and honest transactions ordinarily are not indicative of a plan or scheme to commit the offense charged nor of any wrongful or criminal intent with respect to its commission on the part of the accused. * * * [citing authorities]."

Robison's testimony detailing the condition of the doors to the lumberyard structure at 2:30 a.m. was proper evidence tending to show there had been an attempt to break and enter the yard. Robison's description of the condition found was reasonably similar to the condition found at the same time at Powell's hardware store. The evidence was admissible as bearing on defendant's intent at the time of breaking and entering the hardware store. In order to give Robison's testimony relating to the condition found probative value it was necessary to describe the condition of the yard when he left the evening of November 17.

The court did not err in its ruling on defendant's objection in this instance.

III. In still another assignment defendant complains of the court's failure to sustain his objection to the testimony of Wallerich narrating the conversations overheard between defendant and Ayers.

The conversations took place on two different occasions and were heard by Wallerich while at the jail. The conversations included talk about the activities of the early morning hours of November 18. At trial defense counsel objected to Wallerich's testimony concerning the conversation mainly on the grounds of irrelevancy and immateriality; on appeal only these grounds are relied upon for reversal. The conversation referred to defendant's attempt to elude the police, to the sledge hammer found at the scene of the crime, to defendant's presence at the scene of the crime and to use of the black Ford. The relevancy and materiality of these conversations is obvious; no error was committed either in overruling the objections made at the time of the question or to the motion to strike this testimony and withdraw it from jury consideration made at the close of the State's evidence.

IV. Defendant's two remaining assignments concerning evidentiary issues relate to the introduction by the State of a mug shot of defendant.

Richard Merz, deputy sheriff of Keokuk County, testified for the State. Upon recall he testified concerning the taking of a mug shot of defendant after his incarceration. Defense counsel objected strenuously to almost every question in this sequence and to the introduction of the mug shot into evidence mainly upon the grounds of irrelevancy and immateriality; he argues only concerning the relevancy and materiality of testimony and exhibit upon this appeal. The State argues that defendant's appearance after arrest was placed in issue by defense counsel in his cross-examination of various State witnesses.

Defense counsel has asked at least two witnesses about the appearance of defendant's face and whether there was blood on it. Apparently, this was in regard to the possibility of police misconduct or mistreatment of defendant during or after his arrest. Counsel's questions were inferential only; he never inquired directly of any of the officers whether they had struck the defendant. Evidently, the prosecutor was concerned about jury sympathy and therefore sought to admit into evidence a picture of defendant taken the following day. It showed no evidence of cuts or scratches on defendant's face.

Although all persons questioned denied that defendant appeared cut, scratched or bloody, the State apparently felt that something more tangible was needed; thus the attempted introduction of the mug shot. The State's introduction of the mug shot was in the nature of rebuttal, but only to counter testimony elicited on cross-examination. Note that the witness Merz was recalled, was the last State witness and testified only concerning the photo. This is not the classic form of rebuttal because

defendant had not presented any direct evidence himself; but it certainly is in the nature of rebuttal.

This case does not present the situation where a mug shot of the accused taken in connection with any previous arrest or conviction is offered by the State as a part of its main case. There the argument is usually made that by introducing the mug shot in its case in chief the State puts defendant's character in issue and violates his rights against self-incrimination and to due process of law under amendments 5 and 14 to the federal constitution. See State v. Redding, 169 N.W.2d 788, 790-794 (Iowa 1969).

Defendant makes no such contention in this case nor does he maintain that his right not to take the stand in his own defense was substantially destroyed by the introduction of the picture.

As pointed out, the mug shot was taken after defendant's arrest for the crime upon which this prosecution is based.

■ Neither the limited use permitted the State in this instance nor the receipt in evidence of the mug shot constituted an abuse of the trial court's discretion in passing upon the relevancy and materiality of the testimony and exhibit.

V. Defendant's first and second assignments concerned the overruling of his motion for directed verdict. Both assignments are argued together and will be thus considered by this court. Defendant's principal contention is that the State failed to establish by sufficient evidence defendant had the requisite specific intent to commit the crime charged.

Section 708.8, The Code, the statute under which defendant was charged, provides in part:

"If any person, with intent to commit any public offense, * * * break and enter any * * * store * * * or any building in which any goods, merchandise, or valuable things are kept for use, sale, or deposit, he shall be imprisoned in the penitentiary for not more than ten years, * * *."

Breaking as used in this statute "means making an opening into a building by trespass and occurs when an intruder removes or puts aside some part of the structure relied on as an obstruction to intrusion. Opening an entrance door is a breaking." State v. Houghland, 197 N.W.2d 364, 365 (Iowa 1972).

■ Intent to commit a public offense is vital under this section of the Code. The public offense specified in the information here was larceny. Thus, the State had the burden to prove beyond a reasonable doubt as a necessary part of its case defendant had broken into Powell's store with intent to steal. State v. LaMar, 260 Iowa 957, 962-963, 151 N.W.2d 496, 499.

■ An intent to steal may be inferred from the actual breaking and entering of a building which contains things of value or from an attempt to do so. State v. Allnutt, 261 Iowa 897, 905-906, 156 N.W.2d 266, 271; State v. Fox, 159 N.W.2d 492, 494-495 (Iowa 1968); State v. Morelock, 164 N.W.2d 819, 822 (Iowa 1969).

In view of our determination in divisions I through IV of this opinion that the evidence challenged by defendant was relevant and material and properly admitted we find substantial competent evidence in the record that a window pane had been removed from Powell's store and the rear door was open.

It cannot logically be denied that Powell's hardware and appliance store was a building in which goods, merchandise, or valuable things were kept for use, sale, or deposit. Defendant had been identified as one of the persons in the area of the back door and rear window of the store the early morning of November 18 shortly before the police arrived. He was caught by police near the scene after attempting flight. There is also the evidence of a closely re-

lated and reasonably similar offense properly in the record.

In a criminal action the cause should be submitted to the jury and the court should not direct a verdict of acquittal if there is any substantial competent evidence reasonably tending to support the charge. State v. Schurman, 205 N.W.2d 732, 733 (Iowa 1973).

The trial court was correct in submitting the case to the jury.

VI. Defendant argues errors supposedly established here in assignments one through seven in total effect amount to the denial of a fair and impartial trial. Thus, he relies on the contention that error was committed. As stated, no error was committed and therefore this contention is without merit.

The case is therefore

Affirmed.