Patricia L. **MERCER**, Appellant,

v.

**Sunhwan CHI, M.D., Dubuque Radiological Associates, P.C., and St. Joseph Mercy Hospital of Dubuque, Appellees.**

No. 62545.

Supreme Court of Iowa.

Aug. 29, 1979.

Mary M. Schumacher, of Cody, Roth & Gallagher, Dubuque, for appellant.

David L. Hammer and Brendan T. Quann of O'Connor, Thomas, Hammer, Bertsch & Norby, Dubuque, for appellees.

Considered by LeGRAND, P. J., and REES, HARRIS, ALLBEE and McGIVERIN, JJ.

McGIVERIN, Justice.

This appeal involves three evidentiary problems which arose in the trial of a medical battery tort action based on alleged lack of consent by plaintiff Patricia Mercer to administration of a medical test in diagnosis of her condition. She appeals from judgment entered on a jury verdict for defendants, St. Joseph Mercy Hospital, Dubuque Radiological Associates and physician Sunhwan Chi, and claims trial court improperly admitted evidence which she asserts is irrelevant to the issue of consent. We affirm the trial court.

On August 11, 1974 Mercer was brought to the emergency room of Mercy Hospital in Dubuque. She was suffering from a visible blood clot on the back of the left leg. After examining her, Dr. Dall, an internist, admitted Mercer to the intensive care unit. Upon Mercer's admission to the hospital, her husband signed a standardized consent form.

Soon after Mercer's admittance Dr. Dall discussed with her the necessity of performing venogram tests to discover whether she suffered from additional, undiagnosed blood clots. A venogram requires injection of

contrast material into a vein so a series of X-rays can be taken to determine the exact location of a blood clot. Mercer had undergone venograms in the past, knew them to be painful and was very reluctant to undergo the tests again. Dr. Dall finally ordered venograms for Mercer's left leg only, although he preferred venograms for both legs.

On August 18, Mercer was presented with a form entitled "Authorization for Surgical Treatment" which provided in relevant part:

> I, the undersigned, a patient at Mercy Medical Center, Dubuque, Iowa, hereby authorize Dr. _____ and whomever he may designate as his assistants, to administer such treatment as is necessary, and to perform the following operation _____
> Name of Operation
> and such additional operations or procedures as he shall consider necessary on the basis of findings during the course of said operation. I also consent to the administration of such anesthetics as are necessary, with the exception of _____.
> (None, Spinal, or Other)

Mercer testified that, when presented with the document, she asked the "name of operation" line be filled in to designate a *left leg* venogram before affixing her signature. The completed form shows insertion of "venogram (left leg)."

On August 19 Mercer was taken to a laboratory for administration of the venogram tests. According to Mercer's testimony she was informed by Dr. Chi that a bilateral venogram would be performed. Mercer further testified that she refused to undergo a venogram of the right leg and physically resisted. Dr. Chi's testimony concerning the events of the August 19 tests differs from Mercer's testimony. According to Dr. Chi, Mercer gave an affirmative response upon being informed that a bilateral venogram would be administered. Dr. Chi further denied that any physical force was employed in administering the tests. It is undisputed, however, that venogram tests were performed on Mercer's left *and* right legs.

After administration of the venograms Mercer developed a bacterial infection of the right foot known as cellulitis. According to medical testimony later adduced at trial, cellulitis is a common hazard of undergoing venogram tests. At the time of her discharge from the hospital on August 22, Mercer's cellulitis condition was improving but not cured. She was readmitted to the hospital, however, on August 24 and remained until September 5, 1974 for treatment of the condition. Thereafter, Mercer was hospitalized on three different occasions.

On July 27, 1976, Mercer filed a petition against defendants and alleged a cause of action based on medical battery and sought punitive as well as compensatory damages.

After jury trial commenced, plaintiff amended her petition to add a claim based on mental anxiety and distress and withdrew the claim based on punitive damages.

The jury returned verdicts in favor of all defendants.

In this appeal Mercer presents the following issues for our review:

1. Whether evidence of usual medical practice of administering bilateral venograms is relevant to the issue of consent in an action based on a theory of medical battery in administration of a venogram to the right leg;

2. Whether evidence of consent to similar test procedures is relevant to the issue of consent to a venogram of the right leg; and

3. Whether evidence of failure to physically resist a venogram of the right leg is relevant to the issue of consent in an action based on a theory of medical battery.

In this appeal we are presented with three issues which each require consideration of the principles of relevancy. The principles governing relevancy and materiality were reviewed in *State v. Clay,* 213 N.W.2d 473, 477 (Iowa 1973), where we quoted in part from Ladd, *Objections, Motions and Foundation Testimony,* 43 Cornell L.Q. 543, 546 (1958) in saying:

> [M]ateriality ordinarily relates to the "pertinency" of offered evidence to the

issue in dispute or to the issue of credibility . . .

Relevancy on the other hand, relates to the probative value of evidence in relation to the purpose for which it is offered.

We further stated in *Clay*:

The law of evidence does teach what evidentiary facts are incompetent because in violation of the exclusionary rules. But as to irrelevant and immaterial matters logic and reasoning processes are the only tests.

*Clay*, 213 N.W.2d at 477. *See State v. O'Connell*, 275 N.W.2d 197, 203 (Iowa 1979); *State v. Kaufman*, 265 N.W.2d 610, 619–20 (Iowa 1978).

■ The determination of relevancy is vested in trial court's discretion. *O'Connell*, 275 N.W.2d at 203; *Kaufman*, 265 N.W.2d at 619.

The scope of our review is for correction of errors of law. Iowa R.App.P. 4.

■ I. *Usual medical practice.* The pleadings in this case present us with an unusual relevancy problem. Mercer contends evidence of usual medical practice adduced at trial is not relevant to the issue of her consent to a venogram of her right leg. Allegations of such medical battery, however, are ordinarily combined with allegations of negligence. *See Perin v. Hayne*, 210 N.W.2d 609 (Iowa 1973). Where negligence is pled, evidence of usual medical practice would be relevant to the standard of care. Presented only with allegations of medical battery, we must determine whether evidence of usual medical practice, nevertheless, may be properly admitted over relevancy objections under the record in this case.

■ Although Mercer challenges the relevancy of evidence of usual medical practice to the issue of consent, the evidence is properly admitted if relevant to any issue in the case. During the first one and one-half days of trial plaintiff sought recovery of punitive damages. We have said such an award requires a showing of "the necessary animus" in commission of the wrongful act. *White v. Citizens National Bank of Boone*, 262 N.W.2d 812, 817 (Iowa 1978). Evidence of usual medical practice appears relevant to disproving the "animus" discussed in *White*. It could logically be argued the tests were performed in furtherance of usual medical practice rather than some intentional infliction of injury or discomfort on the patient. Although the punitive damage claim was subsequently dismissed, the claim was included in the petition when part of the evidence complained of was adduced.

■ The relevance of usual medical practice to refutation of the punitive damage claim cannot justify admission of the challenged evidence after dismissal of the punitive damage claim; however, subsequent trial developments provide an independent basis for admission of that evidence. Mercer also complains of evidence of surgical implications of bilateral and unilateral venograms which was adduced *after* dismissal of the punitive damage claim. According to the challenged testimony a less severe form of surgery to restrict the movement of Mercer's blood clot would be and was performed following the bilateral venogram. Although Mercer again contends such evidence is not relevant to the issue of consent, the medical implications of a bilateral rather than a unilateral venogram were opened by Mercer's own testimony.

We have said a party may contradict testimony by showing a fact is otherwise than testified to by a witness. *See State v. Wycoff*, 255 N.W.2d 116, 118 (Iowa 1977) (evidence of conversation admissible to contradict previous testimony concerning the same conversation. "The present situation is merely an illustration of the right of a party to contradict a witness by showing the fact is otherwise.").

Following dismissal of the punitive damage claim but prior to the subsequently challenged testimony, Mercer testified on direct examination in part:

Q. What was your intention concerning any proposed venogram to the right leg? A. I had no intention of a venogram to the right leg.

Q. Did you have some purpose in mind why you didn't want a venogram to your right leg? A. Definitely, general pain and nothing wrong with the right leg.

Q. Was there any other reason? A. Medically I didn't—medically I didn't think it was necessary.

Since Mercer testified there was nothing wrong with her right leg which would require testing, the subject was opened for refutation. Defendants were entitled to introduce evidence of usual medical practice to show medical necessity of a right leg venogram to diagnose possible, visually undetectable blood clots of the right leg.

Mercer additionally contends evidence of hospital consent procedures is not relevant to her consent to a right leg venogram. Consent, however, is a factual issue in the present case. Existing hospital consent procedures, especially those followed in behalf of Mercer by her husband, seem relevant to a factual determination concerning the consent in issue.

■ II. *Similar test procedures.* Shortly after her admission to the hospital Mercer underwent lung scan tests which, testimony showed, were similar in many respects to venograms. Appellant Mercer contends in this appeal that such consent to lung scan tests is not relevant to the issue of consent to a bilateral venogram. We need not review the exercise of trial court's discretion on this issue, however, since the challenged evidence is admissible on an alternative ground.

We have said a party cannot complain on appeal of evidence which the party, himself, introduced into the record. *See Brown v. First National Bank of Mason City*, 193 N.W.2d 547, 555 (Iowa 1972) (challenged evidence of gossip and rumor concerning bank investigation elicited by appellant as defendant at trial) and *Times-Guthrian Publishing Co. v. Guthrie County Vedette*, 256 Iowa 302, 304, 125 N.W.2d 829, 831 (1964) (challenged subscription card brought out by appellant as plaintiff at trial). The record reveals that Mercer introduced evidence of the lung scans through direct examination of plaintiff's witness Dr. Dall as well as through introduction of hospital records which noted administration of the lung scan tests.

■ III. *Failure to resist testing.* In her direct testimony early in the trial Mercer testified she physically resisted administration of the right leg venogram. In this appeal, however, appellant Mercer contends evidence of lack of physical resistance was not relevant to consent and that defendants thereby introduced an erroneous element of necessity of resistance into consent law.

Since plaintiff Mercer, herself, testified to her physical resistance to the right leg venogram, defendants were entitled to present evidence in rebuttal under the authorities discussed in division I above. We cannot say trial court erred in permitting the defense to contradict plaintiff's direct testimony.

We have considered all contentions raised by plaintiff and find them to be without merit.

AFFIRMED.