# IN THE COURT OF APPEALS OF IOWA

No. 19-0545
Filed September 23, 2020

**KIMBERLY RANSDELL,**
    Plaintiff-Appellant,

**vs.**

**HUCKLEBERRY ENTERTAINMENT, LLC,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Des Moines County, Mark E. Kruse,

Judge.

An injured customer appeals the denial of her motion for new trial in a

negligence suit. **AFFIRMED.**

Steven J. Crowley, Edward J. Prill, and Andrew L. Mahoney of Crowley &

Prill, Burlington, for appellant.

Clark I. Mitchell of Grefe & Sidney, P.L.C., Des Moines, for appellee.

Considered by Tabor, P.J., and May and Greer, JJ.

**GREER, Judge.**

A picture is worth a thousand words, although here, we have a video—a series of pictures. And the jury charged with following the evidence to a verdict viewed the video of Kimberly Ransdell's go-kart adventure several times. Because the fun ended with a crash, Ransdell sued Huckleberry Entertainment, LLC (Huckleberry) after she fractured her tailbone on a go-kart track at the company's facility known as Fun City. After considering the real-time action video and the other evidence, a jury found Ransdell fifty-one percent at fault, barring her from any recovery. She now challenges the denial of her motion for new trial. Ransdell contends that, after granting her motion in limine foreclosing Huckleberry's evidence of comparative fault, the district court wrongly allowed Huckleberry to argue that affirmative defense in closing. She argues the district court compounded its error by instructing the jury on comparative fault. We find no error and affirm the district court ruling denying Ransdell's motion for new trial.

## I. Facts and Prior Proceedings

Ransdell and her family went go-kart racing at Fun City to celebrate her birthday in November 2016. Ransdell alleges before the race that Fun City employees did not provide instructions on how to drive the go-karts or any safety procedures. But Fun City did have signs posted around the track warning customers not to bump each other with the karts and that anyone suffering neck or back pain should not participate. According to Ransdell, during the race the Fun City employees did not monitor the track and remained silent as the go-karts began to cluster and bump into each other. Ransdell recalled that she was "going around the turn" when one kart hit her from the side and another from the back, spinning

her into the barrier surrounding the track. She testified, "I flung forwards, and I screamed because I felt it pop." After the crash, Ransdell's family took her to a hospital where she learned she fractured her tailbone.

Alleging persistent pain in her tailbone, shoulder, hips, and legs, Ransdell sued Huckleberry for negligence in May 2017. She sought damages for medical expenses, lost income, pain and suffering, and partial loss of future function. During discovery, Ransdell sent interrogatories asking Huckleberry to "[s]tate in detail the facts and circumstances . . . allege[d] to support any affirmative defense to liability in this case." Huckleberry responded with the conclusory statement, "Ransdell was contributorily negligent or at fault, such that her negligence or fault will bar Plaintiff from any recovery or reduce any recovery proportionally in accordance with Iowa Code chapter 668." Because Huckleberry never supplemented that statement with "facts and circumstances," as a sanction, Ransdell moved in limine to prevent Huckleberry from introducing evidence of comparative fault at trial.

The district court sustained the motion the day before trial. In doing so, the court recognized its decision to exclude evidence of comparative fault "could have the effect of altering the Plaintiff's case." Yet leaving the door ajar, the court added it was "aware that issues of negligence will overlap at times with comparative fault and those issues will be addressed during trial." The court's prediction would prove true.

A jury trial began in mid-January 2019. After hearing Ransdell's evidence, the district court evaluated the applicability of the comparative-fault defense to the law of the case. Before the trial ended, the district court suggested to counsel that

comparative fault would likely be submitted to the jury. In its order, the court clarified the objective of the motion in limine was to control matters of evidence in advance to avoid disclosing prejudicial material to a jury. The court found that Ransdell, rather than Huckleberry, presented evidence justifying submission of comparative fault to the jury. In justifying its decision to allow Huckleberry to argue comparative fault and the accompanying instruction, the court pointed to testimony about go-kart racing having inherent risk; testimony the driver has control over the speed, steering, and braking of the go-kart; photographs of the track that included warning signs; and a cell-phone video of the accident. The court also considered Ransdell's own testimony that she had driven on the track before and that she suffered from multiple sclerosis.

After presentation of this evidence bearing on the comparative fault issue, the court granted Huckleberry clearance to raise the affirmative defense for the first time during closing arguments and the court instructed the jury on comparative fault. Anticipating the written ruling and before resting her case, Ransdell recalled a Huckleberry employee to the witness stand. On direct examination, Ransdell informed the jury that Huckleberry believed Ransdell was at fault, but she clarified that the company failed to reference any specific act of negligence by Ransdell in its interrogatory answer. In doing so, Ransdell inserted Huckleberry's allegation of comparative fault into the evidence without preserving her position on the record that she only raised the issue of comparative fault because of the court's anticipated ruling. Yet, before resting, Ransdell did not require a ruling on the pending comparative-fault issue. Huckleberry offered no evidence in the trial.

After being instructed that "[d]amages may be the fault of more than one person," the jury returned a verdict finding Huckleberry forty-nine percent at fault and Ransdell fifty-one percent at fault for her injures. Because the jurors found Ransdell more than fifty percent at fault, they awarded no damages. Ransdell moved for a new trial, claiming her substantive rights were materially affected based on legal error in the proceedings. The district court denied the motion for new trial, and Ransdell now appeals.

## II.     Scope and Standards of Review

Iowa Rule of Civil Procedure 1.1004 governs motions for new trial. That rule sets out nine possible grounds available to an aggrieved party when an error "materially affected movant's substantial rights." Iowa R. Civ. P. 1.1004. Our standard of review for a new-trial ruling depends on the grounds raised in that motion. *Olson v. Sumpter*, 728 N.W.2d 844, 848 (Iowa 2007). If the motion addresses a discretionary ground,[1] we review for an abuse of discretion; if the motion depends on legal grounds,[2] we review for errors at law. *Fry v. Bauvelt*, 818 N.W.2d 123, 128, 129 (Iowa 2012)*.*

Ransdell asserts several grounds for a new trial under Iowa Rule of Civil Procedure 1.1004, including (1) "[i]rregularity in the proceedings," (2) "[m]isconduct," (3) "[a]ccident or surprise," (6) insufficient evidence, and (8) "[e]rrors of law occurring in the proceedings." Ransdell concedes all of her grounds for new trial "almost entirely revolve around the introduction of

---

[1] Denial of a motion involving claims of misconduct, accident, and surprise are viewed for an abuse of discretion.

[2] Denial of a motion related to sufficiency of the evidence, legal error, or a directed verdict are reviewed for correction of errors at law.

comparative fault after the close of evidence." Thus, her primary complaint centers on the district court's decision to allow Huckleberry to argue comparative fault in closing arguments and instruct the jury on that affirmative defense. She also asks for new trial under Iowa Rule of Civil Procedure 1.1003(2), claiming the district court erred by refusing to grant her motion for directed verdict.[3] She argues the district court erred as matter of law because the record lacked substantial evidence to support giving those jury instructions.

A new trial motion based on a discretionary ground is reviewed for an abuse of discretion. *Loehr v. Mettille*, 806 N.W.2d 270, 277 (Iowa 2011). "An abuse of discretion consists of a ruling which rests upon clearly untenable or unreasonable grounds." *Lawson v. Kurtzhals*, 792 N.W.2d 251, 258 (Iowa 2010). An "unreasonable" decision is one that is not based on substantial evidence. *Channon v. United Parcel Serv. Inc.*, 629 N.W.2d 835, 859 (Iowa 2001). "In ruling upon motions for new trial, the district court has a broad but not unlimited discretion in determining whether the verdict effectuates substantial justice between the parties." Iowa R. App. P. 6.904(3)(c). And we are "slower to interfere with the grant of a new trial than with its denial." Iowa R. App. P. 6.904(3)(d). Still, unless a different result would have been probable absent misconduct, a new trial is not warranted. *Mays v. C. Mac Chambers Co.*, 490 N.W.2d 800, 803 (Iowa 1992).

"Because the sufficiency of the evidence presents a legal question, we review the trial court's ruling on this ground for the correction of errors of law." *Fry*,

---

[3] Again the basis for the directed verdict motion was the lack of substantial evidence of comparative fault, which Ransdell acknowledged was a "parallel" argument to her position on the motion for new trial request.

818 N.W.2d at 128 (citation omitted). "A party is entitled to have an adverse decision vacated and a new trial granted if errors of law occurred in the proceeding." *Iowa Mut. Ins. Co. v. McCarthy*, 572 N.W.2d 537, 544 (Iowa 1997) (citing Iowa R. Civ. P. 1.1004(8) (then numbered rule 244(h))); *see also Baysinger v. Haney*, 155 N.W.2d 496, 499 (Iowa 1968) ("[T]he trial court has before it the whole scene, the action and incidents of the trial as they occur, and is in a much better position to judge whether the defendant has been prejudiced by misconduct of opposing counsel, if there is such.") Although insufficient evidence and the failure to effect substantial justice are independent grounds for challenging a jury verdict, we discuss them together because Ransdell's arguments in support of both claims are identical. *Estate of Hagedorn ex rel. Hagedorn v. Peterson*, 690 N.W.2d 84, 87 (Iowa 2004).

### III.   Analysis

In this appeal, each arrow in Ransdell's quiver points to two questions. First, did the district court court reverse course on the motion in limine ruling after presentation of most of the evidence by Ransdell and, if so, did it materially affect Ransdell's substantial rights?   Second, was there substantial evidence of Ransdell's fault twarrant a comparative fault instruction?

*A. Did the district court's reversal of the limine ruling materially affect Ransdell's substantial rights?*

Ransdell contends that the trial court made an error of law in the proceedings that prejudiced her case.  She frames the error as occurring at the end of the trial.  Put simply, after precluding Huckleberry from introducing any evidence of Ransdell's fault in the trial, the district court changed course so that

Huckleberry could argue comparative fault in closing and instructed the jury on comparative-fault law. Arguing the court reversed the limine ruling, Ransdell raises issues of irregularity of the trial court and unfair surprise to her. She also points to misconduct by Huckleberry. She urges the appeal of this prejudicial ruling constitutes an issue of first impression in Iowa. We are not convinced.

We recognize, as Ransdell notes, this case is complicated by the fact that the district court at first granted her request to restrict Huckleberry from advancing the affirmative defense of comparative fault. But, Ransdell's counsel recognized the care necessary when presenting the evidence to avoid violating the limine order and "opening the door" to allowing evidence of comparative fault.[4] For example, during Ransdell's testimony, she claims her counsel avoided going into specifics about how she operated the go-kart. She also emphasizes the prejudice she suffered based on the district court's decision to reverse course on submission of comparative fault so late in the trial.

All the same, the district court maintained its limine ruling, and Huckleberry never presented comparative-fault evidence. And, while a motion in limine provides guidance during the trial, it is not always the roadmap to the end. Instead,

---

[4]     [T]he doctrine of 'opening the door' is a reference to situations in which the admission into the record of admissible evidence is a prerequisite for introduction of other evidence. A party opens the door by offering admissible evidence that in turn triggers admissibility of responsive evidence by an opposing party.

*State v. Huser*, 894 N.W.2d 472, 507 (Iowa 2017). Here, the district court referred to "curative admissibility." "The doctrine of curative admissibility, however, only applies when inadmissible evidence has been entered into the record and the other party seeks to admit further inadmissible evidence to cure the error. This is what is colloquially referred to as the 'fight fire with fire' theory." *Id.* at 506–07. Here, the issue is if the admissible evidence offered by Ransdell supports a legal defense.

a ruling sustaining a motion in limine simply acts as a procedural step to the introduction of allegedly objectionable evidence. *Quad City Bank & Tr. v. Jim Kircher & Assocs., P.C.*, 804 NW.2d 83, 89 (Iowa 2011). But "[g]enerally, the district court's ruling on a motion in limine is not subject to appellate review because the error, if any, occurs when the evidence is offered at trial and is either admitted or refused." *Wailes v. Hy-Vee, Inc.*, 861 N.W.2d 262, 264 (Iowa Ct. App. 2014). If the ruling is "unequivocal and leaves no question that the challenged evidence will or will not be admitted at trial," the issue is preserved for appellate review. *Id.*

When a district court does not make an unequivocal ruling in limine regarding the admissibility of evidence and instead signals that issues might be addressed related to the evidence when a party actually wants to present the evidence at trial, the party must object to the evidence to preserve error. *Estate of Casteel by & through Hutt v. Wray*, No. 17-1504, 2018 WL 4635695, at *4 (Iowa Ct. App. Sept. 26, 2018) (noting the district court sustained the limine motion on certain evidence but confirmed it would make appropriate rulings when the other evidence was presented during trial). Here, in the ruling on the motion in limine, the district court warned "that issues of negligence will overlap at times with comparative fault and those issues will be addressed during trial." Huckleberry complied with the ruling, but Ransdell's evidence—not Huckleberry's—overlapped into the lane of comparative fault without objection.

On our review of the record, that overlap into comparative fault came at four key points. First, photographs of the venue showed warning signs directed to the participants. Ransdell proved those warnings. Second, a jury could find the video

of the incident showed Ransdell driving with her brake foot off the brake and outside the go-kart despite posted warning signs that stated, "Keep arms and legs in kart at all times," and "Arms & Legs in Karts AT ALL TIMES." Ransdell submitted that video and signage evidence. Third, a jury could find that Ransdell bumped into the go-kart in front of her in violation of the warnings directing "NO bumping—EVER!!" and "NO BUMPING.," from the "real time" video evidence offered by her in this trial. And finally, after testifying about pre-existing neck and back problems, a jury could find Ransdell failed to heed the warning she provided the jury: "If you are pregnant, experiencing neck or back pain or have heart problems, please do not operate a go-kart."

With this evidence in the record, the limine ruling is moot. "We have said a party cannot complain on appeal of evidence which the party, himself, introduced into the record." *Mercer v. Chi*, 282 N.W.2d 697, 701 (Iowa 1979) (challenging lung scans introduced through complaining party's own expert); *see, e.g.*, 1 McCormick on Evidence § 54 (8th ed. Jan. 2020 update) ("If the testimony is received without objection, the testimony becomes part of the evidence in the case and is usable as proof to the extent of its rational persuasive power."). Contrary to her assertion, before Ransdell closed her case, she had some notice that comparative fault would be argued to the jury and what possible specifications of negligence might be alleged.[5] With that knowledge, she called an employee of

---

[5] Eleven days before the start of trial, in a proposed jury instruction, Huckleberry offered these specifications of fault against Ransdell:
> 1. Ransdell was at fault. In order to prove fault, Huckleberry Entertainment must prove:
>     a. Ransdell failed to keep a proper lookout when operating her go-kart; or

Huckleberry in her case and pointed to the company's answer to an interrogatory on comparative fault. Ransdell's counsel addressed the employee:

> Q. The interrogatory posed to your employer was, number 18, state in detail the facts and circumstances you allege to support any affirmative defense to liability in this case including but not limited to an affirmative defense allegation defense such as comparative fault of the Plaintiff or anyone else in any form; preexisting condition of the Plaintiff; D, that the Plaintiff failed to mitigate damages; assumption of risk in any form, or any contractual defense based on any ticket, posting, contract release or any other form of contract. Did I read that correctly, although a little rough? A. Yes—yes, sir.
> Q. And then it says answer. What was the answer that you provided us in—well, not you, but Fun City gave us in November of 2017? A. Plaintiff Kimberly Ransdell was contributorily negligent or at fault such that her negligence or fault will bar Plaintiff from any recovery or reduce any recovery proportionately in accordance with Iowa Code Chapter 668.
> Q. In addition to that did Fun City—that's the entire answer, isn't it? A. Yes.
> Q. Is there any mention in there of any facts or circumstances in the answer? A. Not to my knowledge.
> Q. Is there any criticism in that sworn answer of how she drove her car—or kart? A. No.
> Q. Is there any criticism in that answer of how anybody else around her drove their kart? A. No.
> Q. Is there any criticism in there about her failing to follow instructions or notice a sign? A. No.
> Q. Is there any mention of any facts or circumstances in that answer that points to some preexisting problem in her coccyx? A. No.

Although the employee admitted that no specific complaints of negligence were set out in the interrogatory answer, Ransdell raised the defense of comparative fault to the jury, not Huckleberry.

---

> b. Ransdell failed to obey the safety rules posted; or
> c. Ransdell failed to maintain control of the speed or direction of her go-kart; or
> d. Ransdell failed to locate, read, and understand the posted medical requirements.

Once the district court weighed the evidence, the next step was to look forward to the law of the case—the instructions. We find no error by the district court related to the motion in limine ruling. As to the appropriate law of the case, we find the district court's reasoning persuasive:

> [Ransdell] has brought in the warning signs, the photographs, so I mean all those issues of comparative fault have already been brought up by [Ransdell] in this case, and fairly enough through the experts and other testimony, so, you know, it's just like what's left of that anymore? I mean, I'm supposed to instruct the jury that didn't exist? Because the defense didn't bring it up, the Plaintiff did. So that's going to be a troubling issue in this case.

Thus, Ransdell's arguments about irregularity in the proceedings, misconduct, and accident or surprise fail.

But with yet another arrow, Ransdell also argued a new trial was warranted because of Huckleberry's counsel's misconduct. She speculates that Huckleberry purposely hid its comparative fault allegations, slid in some photographs of warning signs, got the district court to reverse the ruling on the motion in limine, and then presented their "exact theory" in closing. Nevertheless, Ransdell failed to prove misconduct through speculation. Instead, because of the nature of the case, their mutual insertion of warning signs into the record is an example of negligence overlapping into comparative fault issues. Yet Ransdell asserts Huckleberry's introduction of photographs of the warning signs confirms Huckleberry's alleged ulterior motive to insert comparative fault into the case. With some notice from Huckleberry's proposed instructions about failure to obey warning signs, the photographs of the signage were admitted without any objection from Ransdell. Indeed, Ransdell introduced warning-sign concerns through one of her experts. So had Huckleberry not offered warning sign photographs, Ransdell is unable to

show "a different result would have been reached but for the claimed misconduct of counsel for the prevailing party" since, again, she submitted that evidence. *Mays*, 490 N.W.2d at 803 (citation omitted) (finding court did not abuse discretion by denying motion for new trial despite counsel's repeated injection of prior claims made by plaintiffs in violation of limine order).

Thus, the district court did not abuse its discretion in denying the motion for new trial on these grounds premised as a reversal of the ruling on the motion in limine. Now we turn to the final arrow: sufficiency of the evidence.

## B. Was there sufficient evidence of Ransdell's fault to support instructing on comparative fault?

Ransdell contends she is entitled to a new trial because the district court committed error by instructing the jury on comparative fault.[6] She focuses on the

---

[6] At issue are these five instructions:

Instruction No. 23:

> Damages may be the fault of more than one person. In comparing fault, you should consider all of the surrounding circumstances as shown by the evidence, together with the conduct of the Plaintiff, and the Defendant, and the extent of the causal relation between their conduct and the damages claimed. You should then determine what percentage, if any, each party's fault contributed to the damages.

Instruction No. 24:

> Defendant claims Plaintiff was at fault in the following particular: Negligence.
>
> The ground of fault has been explained to you in other instructions.
>
> Defendant must prove both of the following propositions:
>
> 1. The Plaintiff was at fault. In order to prove fault, Defendant must prove:
>
> (a) Plaintiff failed to keep a proper lookout when operating her go-kart;
>
> (b) Plaintiff failed to obey the safety rules posted; or
>
> (c) Plaintiff failed to maintain control of the speed or direction of her go-kart; or

lack of substantial evidence supporting the instructions on that affirmative defense.

A district court cannot instruct on "an issue having no substantial evidential support

or which rests on speculation." *Thompson v. City of Des Moines*, 564 N.W.2d 839,

846 (Iowa 1997) (citation omitted). "Substantial evidence is that which a

reasonable person would find adequate to reach a conclusion . . . ." *Bredberg v.*

*Pepsico, Inc.*, 551 N.W.2d 321, 326 (Iowa 1996). When a party challenges the

sufficiency of evidence to support the jury's factual findings, we examine the record

---

(d) Plaintiff failed to locate, read, and understand the posted medical requirements.

2. Plaintiff's fault was a cause of her damage.

If the Defendant has failed to prove either of these propositions, Defendant has not proved its defense. If Defendant has proved both of these propositions, then you will assign a percentage of fault against the Plaintiff and include Plaintiff's fault in the total percentage of fault found by you in answering the special verdicts.

Instruction No. 25:

"Proper lookout" is the lookout a reasonable person would keep in the same or similar situation. It includes being aware of one's movements in relation to things seen or that could have been seen in the exercise of ordinary care.

Instruction No. 26:

A party is required to exercise reasonable care for their own safety. This means that if, in the exercise of ordinary care under the circumstances, a party could have taken some particular action after an act of fault by another party in order to avoid an injury, then they are under a duty to take such action.

In this case, the Defendant claims the Plaintiff unreasonably failed to take action to avoid an injury because she failed to keep a proper lookout and failed to exercise reasonable care for her own safety.

Instruction No. 27

After you have compared the conduct of all parties, if you find the Plaintiff, was at fault and the Plaintiff's fault was more than 50% of the total fault, then the Plaintiff cannot recover damages.

However, if you find the Plaintiff's fault was 50% or less of the total fault, then I will reduce the total damages by the percentage of her fault.

to determine whether those findings are supported by substantial evidence. *City of Cedar Falls v. Cedar Falls Cmty. Sch. Dist.*, 617 N.W.2d 11, 16 (Iowa 2000). In determining whether the evidence supporting an instruction is substantial, we give the most favorable construction possible for the party urging submission. *Hoekstra v. Farm Bureau Mut. Ins. Co.*, 382 N.W.2d 100, 108 (Iowa 1986). Finally, questions of negligence are for the jury. Iowa R. App. P. 6.904(3)(j).

Ransdell argues no witness or expert testified or offered any substantial evidence to support the submission of comparative fault instructions to the jury. By statute, fault means "one or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others." Iowa Code § 668.1(1) (2017). And in the instructions, the jury learned "negligent" meant "doing something a reasonably careful person would not do under similar circumstances or failing to do something a reasonably careful person would do under similar circumstances." To prove comparative fault, Huckleberry had to show a causal connection between Ransdell's fault and her claimed damages. *See* Iowa Code §§ 668.1(2) ("The legal requirements of cause in fact and proximate cause apply both to fault as the basis for liability and to contributory fault."), 668.3(3) ("In determining the percentages of fault, the trier of fact shall consider both the nature of conduct of each party and the extent of the causal relation between the conduct and the damages claimed."); *see also Greenwood v. Mitchell*, 621 N.W.2d 200, 205 (Iowa 2001) (holding burden rests on defendant to prove plaintiff's fault for failing to mitigate damages).

All the same, even Ransdell recognized she could "open the door" to an argument about comparative fault through the presentation of her case. Likewise,

she also concedes that if there is substantial evidence to support a legal issue the court can instruct the jury on the law. As discussed, the district court pointed to "evidence put into the record" by Ransdell as prompting its "duty to instruct" on comparative fault. Those aspects included: (1) witness testimony about the inherent risk in go-kart racing, (2) photographs of warning signs on the track, and (3) a cell-phone video of the accident showing the go-karts racing in close proximity. The court also mentioned Ransdell's testimony that (4) she had driven on the go-kart track before and (5) suffered from multiple sclerosis. So did this evidence offer substantial proof such that a reasonable juror could weigh the comparative fault of Ransdell?

Here, it was fortuitous that the accident was captured on video. With the video in hand, Ransdell had the choice to play it or simply have the witnesses explain what happened in the accident through testimony. Notably, Ransdell posits the video showed she was struck from behind and provides no evidence of her fault. But after reviewing the "real time" video of the go-kart accident, a jury could have found, as it did, that Ransdell created the situation she found herself in. From the evidence, the jury could find that Ransdell did not have her foot on the brake but instead kept her foot on top of the vehicle as she drove the track. The jury could also find that the accident sequence began when Ransdell tapped the back of the vehicle that was in front of her. In fact, William Avery, the expert for Ransdell, noted in his admitted report that the Ransdell accident was very much like another accident where that driver ran into the back of the vehicle ahead of her causing the accident. A video is often the best evidence of the accident as opposed to someone describing it. To understand the sequence of events at issue

here, one cannot imagine any better evidence of the actor's fault other than observing the race over and over in real time.

Reviewing the evidence in the light most favorable to Huckleberry, there was substantial evidence to support submission of comparative fault to the jury. *See Hoekstra*, 382 N.W. 2d at 108. This case is not complicated. A juror can understand what constitutes appropriate behavior while driving a go-kart. Often, jurors have the task "to sort through the disputed and undisputed facts and to accept or reject any testimony." *Wagner v. State*, No. 13-0931, 2014 WL 5243340, at *3 (Iowa Ct. App. Oct. 15, 2014); *see also Casteel*, 2018 WL 4635695 at *3 (finding substantial evidence where jurors had to weigh the evidence even though there were no direct witnesses to the accident leaving many facts disputed).

Ransdell challenges the district court's consideration of the inherent risk testimony by expert Avery as support for the inclusion of comparative fault into the case. The district court discussed the testimony of Avery, an expert on amusement-ride safety. True, Avery acknowledged an "inherent risk" in go-kart racing. But he also compared the go-kart racing to driving on a highway in a more controlled environment. Ransdell's strategy raised the risk of go-karting but sought to draw focus to the track procedure necessary to alleviate the risk. In doing so, Avery emphasized the importance of "an attentive track attendant" to mitigate the risks of the karts running into each other. In Avery's opinion, Fun City employees followed a "poor safety procedure." Ransdell argues nothing in Avery's testimony opened the door to a comparative-fault defense. *See Ludman v. Davenport Assumption High Sch.*, 895 N.W.2d 902, 914 (Iowa 2017) ("A plaintiff who is actually aware of a *reasonable* risk and voluntarily undertakes it . . . is not

negligent." (quoting Restatement (Third) of Torts: Apportionment of Liability § 3 cmt. c (Am. Law Inst. 2000))).  Still, Ransdell's knowledge of the inherent risk is important in determining whether a "court will allow the jury to find plaintiff has some degree of contributory fault."  *Id.*  But even if Avery's testimony alone did not compel the district court's decision to allow the jury to consider comparative fault, we find there was more support.

And the "more" came from Ransdell's case.  Together with the video, the district court mentioned the testimony about Ransdell's experience at the go-kart track and her acknowledgment that she had been diagnosed with multiple sclerosis, which may have been relevant to the jury's calculation of damages but did not directly speak to her negligence.  Her experience at the track, coupled with the warning signs explaining proper behavior, gave jurors evidence to evaluate the actions of a reasonable person in similar circumstances.  Likewise, a jury could weigh her choice to participate with her previous back and neck issues.

Under the rules of civil procedure, we grant a new trial only if that cause materially affected Ransdell's substantial rights.  *See* Iowa R. Civ. P. 1.1004.  We find Ransdell cannot meet that prejudice standard.  According to Ransdell, had she known the court would instruct the jury on comparative fault, she would have tried her case differently.  As for her strategy, she learned that comparative fault was off the table just a day before trial started but had some inkling of Huckleberry's theme before trial.[7]  The district court noted, "On the issue of

---

[7] Eleven days before the start of trial in a proposed jury instruction, Huckleberry offered these specifications of fault against Ransdell:

1. Ransdell was at fault.  In order to prove fault, Huckleberry Entertainment must prove:

surprise or prejudice to [Ransdell], it is hard to claim surprise or prejudice from the evidence [she] in this case chose to put on." While not a model of how a trial should proceed, trials often involve shifting strategies directed by evidence offered in real time.

Ransdell argues that the video was not introduced to show comparative fault but was played to show a breach in the standard of care at the go-kart facility. She argues the video had to be played to show that breach and "that accident caused the injury." But we can think of no better evidence showing the negligence of a party than a video of the event. And we find that the video opened the door to the question of whether Ransdell was a cause of the accident. *See Mercer*, 282 N.W.2d at 701. Often the video answers the question. Because the video was played so many times, it emphasized its importance. And rather than hearing from an eyewitness who saw the event once, the jurors saw the event many times. As a result, a reasonable juror had substantial information about how the accident occurred. Viewing the evidence in the light most favorable to the verdict, we find the video and other evidence noted above offered substantial evidence from which a jury could find Ransdell at fault. *See Kinseth v. Weil-McLain,* 913 N.W.2d 55, 75 (Iowa 2018). With a party's possible contribution to the accident and her injuries

---

a. Ransdell failed to keep a proper lookout when operating her go-kart; or
b. Ransdell failed to obey the safety rules posted; or
c. Ransdell failed to maintain control of the speed or direction of her go-kart; or
d. Ransdell failed to locate, read, and understand the posted medical requirements.

in the record, it would be error to not instruct on comparative fault if supported by substantial evidence. *Hoekstra*, 382 N.W.2d at 107-08.

After weighing the sufficiency of the evidence to support the comparative fault instructions, we find that a reasonable juror could accept it as adequate to reach the conclusions found in this verdict. We affirm the ruling on the motion for new trial.

**AFFIRMED.**

May, J., concurs; Tabor, P.J., dissents.

**TABOR, Judge,** (dissenting)

I respectfully dissent. Ransdell is entitled to a new trial because the district court misapplied the "curative admissibility" doctrine and instructed the jury on comparative fault despite Huckleberry presenting no evidence supporting that affirmative defense.

The majority maintains the cell-phone video of Ransdell's go-kart crash is the key to the case. And I appreciate that sometimes a video may "speak for itself." *See Scott v. Harris*, 550 U.S. 372, 378 n.5 (2007) (finding videotape capturing police chase contradicted driver's version of events). But a danger exists that an appellate court's idiosyncratic "observation of the video [will become] an excuse for replacing the rule of law with its ad hoc judgment." *Id.* at 394 (Stevens, J., dissenting). The majority flirts with that danger here. After viewing the video, the majority forges assumptions about Ransdell's conduct that have no tie to testimony from the trial.[8]

The majority believes the jurors—without expert help—could reasonably assign Ransdell's fault from just watching the footage that Ransdell's husband shot with his cell phone. I disagree. Huckleberry needed to offer the jury some context about how Ransdell breached a standard of care in operating the go-kart and how that operation may have contributed to her injury.

---

[8] For example, the majority suggests the video shows Ransdell drove the go-kart "with her brake foot off the brake." Trial testimony did describe the go-karts having two pedals—an accelerator on the right and a brake on the left. But no witness testified that a driver cannot use their right foot to both accelerate and brake. And no witness testified that Ransdell's failure to brake with her left foot caused the crash or her injury.

And what I find even more unfair is allowing the assignment of comparative fault after the district court changed the rules toward the end of the game. At the start of the trial, the court agreed with Ransdell's request that Huckleberry "not be allowed to argue" that she was responsible or partially responsible for the crash that led to her injury. The limine ruling was an appropriate sanction for Huckleberry failing to supplement its discovery response to provide specific allegations to support its affirmative defense of comparative fault. *See Carter v. Wiese Corp.*, 360 N.W.2d 122, 136 (Iowa Ct. App. 1984) (upholding exclusion of testimony from defense expert as discovery sanction).

Granted, the limine ruling was malleable. The district court recognized issues of Huckleberry's negligence could "overlap at times with comparative fault" and promised to address those issues during trial. But playing by the rules set at the start, Ransdell adopted a strategy based on the court's grant of her motion in limine. She was careful not to present evidence about her go-kart driving that could "open the door" to comparative-fault arguments. She did not testify about how she controlled the go-kart, and she did not call other go-kart drivers to testify or otherwise try to reconstruct the crash for the jurors.

Yet the majority claims Ransdell's evidence "overlapped into the lane of comparative fault" when she played the cell-phone video of the crash during her testimony. I disagree. Showing the video cannot justify the court's about-face on the discovery sanction. The video came as no surprise. More than one year before trial, as part of discovery, Ransdell provided Huckleberry with the video. In response to receiving the footage, Huckleberry moved to amend its answer to

assert the affirmative defense of comparative fault. Yet it never identified any act or omission by Ransdell that amounted to negligence and contributed to her injury.

At the pretrial conference on Ransdell's motion in limine, Huckleberry's counsel had this exchange with the court:

> MR. MITCHELL: Judge, this is a go-kart accident. And so she was driving a go-kart. We have a video of the go-kart. There's no surprise as to what that comparative fault may be.
> . . . .
> THE COURT: But what is it, though? I mean, we're sitting here and you still haven't stated what it is.
> MR. MITCHELL: So it's a go-kart accident. She's driving her go-kart and ultimately she crashes into this—the side of the wall. Now, whether that was her fault or whether that was somebody else's fault, that's a fact question. That's for the jury to decide.

Ransdell's counsel responded:

> [W]hat was she supposed to have done? In that split second, when her kart was hit by one or possibly two other karts, it flipped her around and she went out of control, and—and I guarantee you, when you see the accident—you haven't seen the video yet. [S]he didn't have time to do anything. . . .
> You can't just say, well, she was driving the kart, therefore she must have been negligent. I mean, that's the problem here, we're in the blind.

The video was always part of the debate. From the outset, the court knew Ransdell intended to play the video and knew Huckleberry planned to parlay the video into an argument for comparative fault. Even so, after Ransdell presented her case, the court changed the rules by lifting the discovery sanction. The court pointed to "evidence put into the record" by Ransdell as prompting its "duty to instruct" on comparative fault. Relying on the doctrine of "curative admissibility," the court ruled Huckleberry could argue comparative fault based on five aspects of Ransdell's proof. Besides the cell-phone video, the court cited witness testimony about the inherent risk in go-kart racing, photographs of warning signs

on the track, as well as Ransdell's testimony that she had driven on the go-kart track before and that she suffered from multiple sclerosis.

Ransdell argues the court misapplied the doctrine of "curative admissibility" when approving the comparative-fault jury instructions and allowing Huckleberry to urge that defense in closing argument. Curative admissibility refers to a situation "when inadmissible evidence has been entered into the record and the other party seeks to admit further inadmissible evidence to cure the error." *State v. Huser*, 894 N.W.2d 472, 507 (Iowa 2017). Ransdell is right—that tit-for-tat did not occur here. First, Ransdell did not offer inadmissible evidence. Second, Huckleberry did not proffer curative evidence. In fact, Huckleberry rested without offering any evidence.[9] Even the majority concedes in footnote 4 that the concept of curative admissibility did not fit this situation.[10]

Beyond misapplying the curative-admissibility doctrine, the district court wrongly determined that the five pieces of proof listed in its order provided substantial evidence for instructing the jury on comparative fault.

Turning first to inherent risk, the court discussed the testimony of William Avery, an expert on amusement-ride safety. True, Avery acknowledged an

---

[9] To prove comparative fault, Huckleberry had to show a causal connection between Ransdell's fault and her claimed damages. *See* Iowa Code §§ 668.1(2), 668.3(3) (2017); *see also Greenwood v. Mitchell*, 621 N.W.2d 200, 205 (Iowa 2001) (holding burden rests on defendant to prove plaintiff's fault).

[10] In that same footnote, the majority recognizes that the phrase "open the door" often refers to a party "offering admissible evidence that in turn triggers admissibility of responsive evidence by an opposing party." *See Huser*, 894 N.W.2d at 507. Because Huckleberry offered no responsive evidence, the majority frames the issue: did the admissible evidence offered by Ransdell support a legal defense? But the question really should be: how did the anticipated and admissible evidence offered by Ransdell trigger the court's revocation of the discovery sanction?

"inherent risk" in go-kart racing. But he also compared the activity to driving on a highway, yet in a more controlled environment. Avery emphasized the importance of having "an attentive track attendant" to mitigate the risks of the karts running into each other. In his opinion, Fun City employees followed a "poor safety procedure." Nothing in Avery's testimony opened the door to a comparative-fault defense. *See Ludman v. Davenport Assumption High Sch.*, 895 N.W.2d 902, 914 (Iowa 2017) ("A plaintiff who is actually aware of a *reasonable* risk and voluntarily undertakes it . . . is not negligent." (quoting Restatement (Third) of Torts: Apportionment of Liability § 3 cmt. c, at 32 (Am. Law Inst. 2000))). Likewise, neither the cell-phone video nor the photographs of the track in his report justify submitting comparative-fault instructions. Contrary to the court's ruling, those exhibits did not provide substantial evidence of Ransdell's negligence.

As to the portions of Ransdell's testimony mentioned by the court, it is unclear why Ransdell's experience at the go-kart track opened the door to Huckleberry's comparative-fault defense. Similarly, Ransdell's acknowledgment that she had been diagnosed with multiple sclerosis may have been relevant to the jury's calculation of damages but did not speak to her negligence.

After all the evidence came in, the court allowed Huckleberry to argue in closing that the jurors could find that Ransdell failed to keep a proper lookout because they had "seen the video several times." Huckleberry's attorney also argued Ransdell failed to maintain control and failed to follow the posted rules on safety and medical restrictions. No testimony supported those arguments. The attorneys did not ask any witness to critique Ransdell's driving, her awareness of her surroundings, or her control of the speed and direction of the go-kart. The

court should have kept out those speculative arguments and declined to submit the comparative-fault jury instructions. *See Thompson v. City of Des Moines*, 564 N.W.2d 839, 846 (Iowa 1997) (holding trial court must refuse to instruct on issue lacking substantial support in the record or which rests on speculation).

Because the district court misused the doctrine of "curative admissibility" and substantial evidence did not support submitting the comparative-fault instructions to the jury, errors of law occurred in the proceedings. And those errors materially affected Ransdell's substantial rights. *See* Iowa R. Civ. P. 1.1004. Ransdell credibly maintains that had she known the court would instruct the jury on comparative fault, she would have tried her case differently. For instance, she would have testified about the care she exercised in driving and about her understanding of the warnings signs. In hindsight, she also would have reconstructed the crash and called the other drivers as witnesses. She would have offered more evidence on go-kart crashes and the relevance of Huckleberry's responsibility to prevent crashes in relation to her actions. Plus, she would have employed a warning and signage expert, explored industry standards for warnings, and offered medical testimony to address the signs.

Ransdell naturally relied on the court's pretrial ruling excluding evidence of comparative fault and suffered prejudice from the erroneous eleventh-hour reversal of that ruling. Although unsupported by the evidence, the court allowed Huckleberry to argue comparative fault in closing and instructed on the affirmative defense. Accepting Huckleberry's comparative-fault argument, the jury found Ransdell fifty-one percent at fault for her injuries, barring any recovery. The errors

in the proceeding materially affected her rights.  I would reverse the judgment entered against Ransdell and remand for retrial.